Points decided.

'(December 31, 1900.)

## KNOLLIN v. JONES, SHERIFF.

[63 Pac. 638.]

NONSUIT—CONSENT OF MORTGAGEE TO SALE OF MORTGAGED CHATTELS BY MORTGAGOR—TITLE OF PURCHASER.—A mortgagee who consents to a sale being made of the mortgaged chattels by the mortgagor waives the lien of the mortgage as to such portions of the mortgaged property as the mortgagor may sell under such consent, and the purchaser takes title free of the mortgage lien.

SAME—EVIDENCE.—Motion for nonsuit is properly denied where the evidence shows that the plaintiff, a purchaser of the mortgaged chattels, bought the property in controversy from the mortgagor with the consent of the mortgagee.

VERDICT—CONTINUING TRANSACTION.—Several mortgages were given by B. & L. to E. S. B. Co. on different bands of sheep; the mortgagee consented in writing that the mortgagors sell the mortgaged property in lots to pay the mortgage debts. The mortgagors did, at various and sundry times, sell portions of the mortgaged chattels and accounted to the mortgagee for the proceeds of such sales; later, another mortgage was given on the remnant left out of the said bands of sheep, to the original mortgagee, by the mortgagors, to secure the balance due on the original mortgage debts, with a small advance; later, the mortgagors sold a portion of the sheep to plaintiff, and after that the mortgagee caused the sheriff to seize the sheep sold to plaintiff under the last mortgage; plaintiff sued to recover possession of the sheep so seized by the sheriff. On the trial letters were admitted in evidence over the objections of the defendants, in which the mortgagee advised and urged the mortgagors to sell all their sheep to meet their obligations. No showing was made that the mortgagee countermanded or recalled its consent to the two sales of said sheep by the mortgagors, and the evidence all tended to show, as did defendants' answer, that the various mortgages and transactions thereunder were treated by the parties as a continuing transaction. A letter from the mortgagee to the mortgagors was also introduced in evidence tending to show a willingness to sales by the mortgagors. *Held,* that all of the letters were properly admitted in evidence, and that the evidence supported the verdict.

INSTRUCTIONS TO JURY.—Erroneous instructions that are favorable, not prejudicial, to the appellant, will not authorize a reversal, or the granting of a new trial. A party who requests an instruction,

which the court gives, but which conflicts with an instruction already given by the court, will not be heard on appeal to complain that the two instructions are inconsistent.

MOTION FOR NEW TRIAL—CUMULATIVE EVIDENCE.—A motion for a new trial, upon the ground of newly discovered evidence, is properly denied where such evidence is cumulative and could, with proper diligence, have been produced at the trial.

JURY—CHALLENGES.—A new trial should not be granted upon the ground that an incompetent juror was drawn upon the panel, where the record shows that the complaining party accepted the trial jury without exhausting his peremptory challenges.

(Syllabus by the court.)

APPEAL from District Court, Blaine County.

W. C. Howie, George M. Parsons and S. B. Kingsbury, for Appellants.

It is the duty of the court to instruct the jury as to the law, and it is the duty of the jury to follow the law as laid down by the court. (*State v. Wright,* 53 Me. 329; *Brown v. McAllister,* 39 Cal. 575; *People v. Anderson,* 44 Cal. 65; *McCrury v. Everding,* 44 Cal. 296.) The instructions of the court upon this subject were conflicting and therefore erroneous. (*State v. Webb,* 6 Idaho, 428, 55 Pac. 892, 894.) Not only did plaintiffs have notice of the existence of the mortgage at the time of the making of the contract of sale, and not only did they require a release of it on delivery, and as a condition of further payment, and not only have they paid nothing but the earnest money, but it is also undisputed that as early as April 26th, and as soon as Evans-Snider-Buel Company knew of the transaction they informed plaintiffs of their rights, of their lien and of the conditions under which they would release the property and ratify the sale. After such notice plaintiffs could not become *bona fide* purchasers, and they could in any event "be protected as a *bona fide* purchaser only to the extent of payments made before such notice as should have prevented them from further payments." (Jones on Chattel Mortgages, 4 ed., secs. 313, 454-457; *Knobl v. Dunn,* 34 Mich. 360.) "The mortgagee's consent to a sale of a portion of the mortgaged property does not infer his con-

sent to the whole of it." (Jones on Chattel Morgages, sec. 457, p. 521; *Riley v. Conner,* 79 Mich. 497, 44 N. W. 1040.)

Charles F. Neal, Lyttleton Price and W. E. Borah, for Respondents.

A mortgagor may make a valid sale of the mortgaged property with the mortgagee's oral consent. Although a sale of the mortgaged property by the mortgagor, without the consent, in writing of the mortgagee, be prohibited by statute, if the mortgagee consent verbally to a sale, such sale is sufficient to pass title to the purchaser in possession. (Jones on Chattel Mortgages, sec. 456.) Authority in the mortgagor to sell mortgaged property may be inferred. Such authority depends upon the intent of the parties. This intent is a question of fact for the jury. (Jones on Chattel Mortgages, secs. 456, 459; *Frick v. Western Star Milling Co.,* 51 Kan. 370, 32 Pac. 1103; *Platt v. Maynard,* 116 Mass. 388; *Stafford v. Whitcomb,* 8 Allen, 518; 2 Cobbey on Chattel Mortgages, sec. 637; *Orton v. Orton,* 7 Or. 478, 33 Am. Rep. 717; *Littlejohn v. Pearson,* 23 Neb. 192, 36 N. W. 477; *Gage v. Whittier,* 17 N. H. 312; *Roberts v. Crawford,* 54 N. H. 532; *Hangen v. Hachemister,* 114 N. Y. 566, 11 Am. St. Rep. 691, 21 N. E. 1046, 5 L. R. A. 137; *Wilson v. Voight,* 9 Colo. 614, 13 Pac. 726; *Aiken v. Pascall,* 19 Or. 493, 24 Pac. 1039; *Southard v. Beemer,* 72 N. Y. 433; *Brackett v. Harvey,* 92 N. Y. 214; *Brown v. Barber,* 47 Kan. 527, 28 Pac. 184.) The verdict is not uncertain; the number of sheep and the value were agreed upon. Besides, such objections as are made to the verdict at this time cannot be considered under the former decisions of this court. (*Blackfoot Co. v. Delamue,* 3 Idaho, 291, 29 Pac. 97.) Defendant cannot be heard to complain that an instruction given at his instance conflicts with those given for plaintiff when such conflict constitutes an error in his favor. (*Alexander v. Clark,* 83 Mo. 481; *Flowers v. Helm,* 29 Mo. 324; *Schmitz v. St. Louis etc. Co.,* 119 Mo. 256, 24 S. W. 472 23 L. R. A. 256; *Williams v. Southern Pacific R. Co.,* 110 Cal. 457, 42 Pac. 974; *Dennison v. Chapman,* 105 Cal. 447, 39 Pac. 61; *Sierra V. Co. v. Baker,* 70 Cal. 572, 8 Pac. 310, 11 Pac. 654.) Errors in instructions

which favor the appellant are not such errors as will cause the case to be reversed. (*People v. Turcott,* 65 Cal. 126, 3 Pac. 461; *People v. Ah Luck,* 62 Cal. 503; *People v. Smith,* 59 Cal. 601; *People v. Velarde,* 59 Cal. 464; *Estate of Gharky,* 57 Cal. 280; *Dennison v. Chapman,* 105 Cal. 447, 39 Pac. 61; *People v. Lon Yeck,* 123 Cal. 246, 55 Pac. 984; *Fort Scott Co. v. Fortney,* 51 Kan. 287, 32 Pac. 904.) In passing upon the instructions, all the instructions must be taken together, and if they, as a whole, present the law fairly, that is sufficient, and "no proper interpretation of the meaning of the court can be made on detached or isolated portions." (*Ellis v. Tone,* 58 Cal. 297; *People v. Doyell,* 48 Cal. 85; *People v. Nelson,* 56 Cal. 77; *People v. Bernard,* 2 Idaho, 193, 10 Pac. 30.) It is contended that we are not entitled to recover interest. Our understanding is that our measure of damages, in case the sheep could not be returned, was the value at the time of the taking, with interest. (*Cornwall v. Mix,* 3 Idaho, 687, 34 Pac. 893; *Sebree v. Smith,* 2 Idaho, 357, 359, 16 Pac. 915; *Werner v. Graley,* 54 Kan. 383, 38 Pac. 482.) The affidavits upon motion for new trial do not disclose newly discovered evidence, neither is diligence shown in securing the evidence set forth or foreshadowed in the affidavits. It is also cumulative and most of it in the nature of impeaching evidence. To support a motion on the ground of surprise, it must be shown that due diligence has been used in preparing for the trial upon every material question of fact and besides, the party must, at the time of the surprise, make known that fact and ask for a continuance. (*Turner v. Morrison,* 11 Cal. 21; *Heath v. Scott,* 65 Cal. 548, 4 Pac. 557; *Outcalt v. Johnston,* 9 Colo. App. 519, 49 Pac. 1058; *Ferrer v. Company,* 47 Cal. 430; *Pincus v. Brewing Co.,* 18 Wash. 108, 50 Pac. 930; *People v. McCurdy,* 68 Cal. 576, 10 Pac. 207; *Stoaks v. Munroe,* 36 Cal. 309; *Knuffke v. Knuffke,* 8 Kan. App. 857, 56 Pac. 326; *Klopenstine v. Hays,* 20 Utah, 45, 57 Pac. 712; *People v. Superior Court,* 10 Wend. 285; *Alabama Co. v. Johnson,* 123 Ala. 667, 26 South, 160.)

QUARLES, J.—The respondent commenced this action to recover from the appellants the possession of seven thousand four hundred and forty-one head of sheep and damages for their retention. Appellants answered, alleging the following facts: That the appellant L. C. Jones, sheriff of Lincoln county, as agent for the appellant the Evans-Snider-Buel Company, seized said sheep, same being known as "Boyd & Litts' sheep." That said sheep were the property of, owned, and possessed by Boyd & Litts, a copartnership composed of Frank W. Boyd and G. W. Litts, subject to certain mortgage liens of the appellant, the Evans-Snider-Buel Company. That on October 27, 1898, said Boyd & Litts executed to appellants the Evans-Snider-Buel Company a mortgage on said sheep and other sheep to secure an indebtedness of $29,946.48 due said Evans-Snider-Buel Company from said Boyd & Litts. Said mortgage was duly verified, executed, and acknowledged, and filed of record in the office of the recorder of Elmore county, on November 1, 1898, and copies thereof filed of record in the counties of Ada, Owyhee, and Blaine in November, 1898, and that the respondent knew of the existence of that mortgage, and knew that said sheep were so mortgaged to said Evans-Snider-Buel Company. During the year of 1897 and 1898 said Evans-Snider-Buel Company advanced from time to time to said Boyd & Litts upon loans, to secure which said Boyd & Litts, from time to time, executed mortgages on sheep owned by them in different parts of the state of Idaho, including the sheep to recover the possession of which this action was commenced by the respondent. One of said mortgages was executed June 11, 1898, to secure the sum of $82,072.21 upon forty-one thousand six hundred and fifty-four sheep. This mortgage was subject to other mortgages given by said Boyd & Litts to said Evans-Snider-Buel Company on portions of said sheep. A number of mortgages were executed by said Boyd & Litts to said Evans-Snider-Buel Company, all of which are set forth in the answer of the appellants. The mortgage under which defendant Jones seized said sheep, executed October 27, 1898, is the last one executed between the parties, and covered

twenty-two thousand head of sheep. Each of the mortgages contained the following clause, to wit: "It is provided, however, that the said livestock and chattels shall remain in the possession of said mortgagors herein, and fed by the mortgagors during the term of this mortgage, subject to the conditions and stipulations hereinafter set forth and expressed; but the mortgagors shall have no right to remove the same, or any part thereof, from the place where they are now located, excepting as may be herein provided, or to otherwise dispose of or encumber said property, without the written permission of the holders of the note or notes hereinafter mentioned. At least three days before the maturity of said note or notes, the above-described livestock shall be shipped and consigned to Evans-Snider-Buel Company, at Union Stockyards, South Omaha, Nebraska, Union Stockyards, Chicago, Illinois, or Kansas City Stockyards, Kansas City, Missouri, and sold by it on commission, in the usual and customary way, and out of the proceeds it shall pay itself the hereinafter mentioned indebtedness,, and a commission of fifty cents (50c.) per head on the whole number of cattle mentioned herein, and on any other of the livestock herein mentioned the regular commission provided by the exchanges where the same may be sold."

There is considerable evidence, both oral and documentary, including a large correspondence between Boyd & Litts on the one hand, and said Evans-Snider-Buel Company upon the other. The respondent, A. J. Knollin & Co., claims to have purchased said sheep from said Boyd & Litts on the fourteenth day of April, 1899. The contract of sale was in writing, signed by said Boyd & Litts and said Knollin & Co. Respondent took possession of the sheep in question, under said contract of sale, on the nineteenth day of April, 1899, some five or six miles east of Mountain Home, in Elmore county. The contract price was $13,771.40, $2,000 of which was paid April 14, 1899, and a draft for the balance ($11,771.40) was delivered to said Boyd & Litts April 19, 1899, at which time Knollin & Co. took possession of the sheep in question. The sheep remained in their possession until May 4, 1899, when the sheriff of Lincoln county, the appellant Jones, seized the same

under the chattel mortgage aforesaid, on October 27, 1898; whereupon this action was commenced, and in proceedings of claim and delivery the coroner of Lincoln county took said sheep from the possession of said sheriff, whereupon the appellants executed a redelivery bond, and said sheep were turned back to the possession of the appellants.

The only important question of fact in this case, and to which the evidence pointed and was directed, is whether said sale was made by Boyd & Litts to Knollin & Co. with consent of said Evans-Snider-Buel Company. There are many letters in the record from said Evans-Snider-Buel Company to said Boyd & Litts, during the existence of the prior mortgages, urging said Boyd & Litts to sell sheep covered by said mortgages in order to meet their obligations to said Evans-Snider-Buel Company secured by those mortgages. This evidence shows a willingness on the part of said mortgagee to have the mortgaged property sold by the mortgagors, said Boyd & Litts, and the latter did at different times sell quantities of the sheep so mortgaged, accounting to said mortgagee for the purchase price of the sheep so sold. These letters were prior to the execution of the last mortgage, to wit, the one mentioned aforesaid, of date October 27, 1898. But a careful consideration of the evidence introduced before the jury at the trial, as well as the answer of the appellants, showed that this last mortgage, given to secure balances due upon the former mortgage debts, and an advance made by the mortgagee to enable the mortgagors to carry the sheep mortgaged through the winter of 1898 and 1899, was treated and regarded by the parties, to a certain extent at least, in the light of a continuing transaction. No notice was given said mortgagors by said mortgagee that sales of the sheep mortgaged were no longer to be made by the mortgagors or that the consent of said mortgagee to such sales being made by the mortgagors was withdrawn.

It is argued on behalf of the appellants that the evidence does not show that after the execution of the last mortgage the mortgagee agreed or consented to any sale being made by said Boyd & Litts. On April 20, 1899, the following letter was written by the mortgagee to said mortgagors, to wit: "[Evans-

Snider-Buel Co's. letter-head.] "Union Stockyards, South Omaha, Neb., April 20, 1899. Joint Letter. Messrs. Boyd & Litts, Boise City and Mountain Home, Idaho—Gentlemen: We beg to acknowledge receipt of Mr. Geo. W. Litts' letter of April 4th, asking our advice in regard to selling yearlings at $2.00 per head. We are unable to say anything that will be of use to you, as we are not fully acquainted with the general conditions of your country, nor of your plans of working out your deal. We know of some sales of yearlings in Oregon at $2.00 per head, but we are not posted upon the general feeling of sheep men in the northwest country in regard to prices of sheep for the coming summer. However, it is our opinion that prices will not be as good as last year. Respectfully yours, Evans-Snider-Buel Co., by C. C. Daly, Manager."- The yearlings mentioned in this letter, as shown by the evidence of Mr. Litts, are the sheep in controversy. The evidence shows that, in September preceding, said mortgagors, Boyd & Litts, sold a portion of the mortgaged sheep to said Knollin & Co., who were permitted to retain the same as their own by the mortgagee without any release of the mortgage being given by said mortgagee. A careful consideration of all of the evidence introduced before the jury convinces us that the jury were justified in coming to the conclusion, which they must have reached, that the sale made by said mortgagors on April 14, 1899, and completed by delivery on April 19, 1899, was made by the mortgagors with the consent of the mortgagee.

At the close of the plaintiff's evidence the defendants made a motion for nonsuit in the following words, to wit: "Defendants make motion for a nonsuit on the ground that the purchasers of the sheep and the agents of plaintiff examined the records, and knew of the mortgage, and purchased the sheep, and with knowledge they made this contract of purchase, and it is not claimed that the mortgage is paid or money ever tendered." This motion was denied, and this action of the court is the ground upon which the appellants base their first assignment of error. This motion was properly overruled. Actual knowledge of the existence of the mortgage could not defeat the purchase or affect the rights of the purchasers, where

the sale is made with the consent of the mortgagee. The consent of the mortgagee to a sale of the chattels mortgaged waives the lien of the mortgage as to one who purchases from the mortgagors. It is true that the consent to a certain specified portion of mortgaged chattels is not a consent to other portions. But in the case at bar the evidence was sufficient to justify the jury in finding that the mortgagee did consent to a sale of such portions thereof as the mortgagors might desire to sell.

The second assignment of error relates to the introduction of certain letters from the mortgagee to the mortgagors, in which the said mortgagee not only advises the sale of the sheep mortgaged in lots, but insists upon such sales. These letters were introduced over the objection of appellants, who excepted thereto. It is argued that owing to the fact that these letters were written prior to the last mortgage, which was executed October 27, 1898, they were for that reason irrelevant, and this is the ground upon which their introduction was excepted to, as shown by the record. We think that these letters were proper evidence, and that their admission was not error. As heretofore stated, the parties all along treated the various mortgages and acts thereunder as one continuing transaction, and the answer of the appellants so treated them, and it was upon this ground that the trial court evidently admitted said letters in evidence.

The third assignment of error is based upon the ground that the evidence is insufficient to sustain the verdict. We cannot agree with the appellants upon this contention. What we have heretofore said disposes of this alleged error, and makes it unnecessary to further review the evidence. Suffice it to say that we have given our most careful attention to the evidence, and think that it sustains the verdict.

The fourth assignment of error is that the verdict is too vague and indefinite to support the judgment. We do not think so. It is, however, unnecessary to enter upon a discussion of this question, for the reason that the record does not show that this question was raised before entry of judgment. In *Stock Co. v. Delamue,* 3 Idaho, 1017, 29 Pac. 97, this court

held that this question could not be raised after judgment. In that case this court said: "Another answer to ·the contention of plaintiff is that it comes too late. Objections to the form of the verdict should be made before judgment. If a verdict can be understood, it will be sustained, although informal. The language should be so construed as to sustain the verdict if possible." The plaintiff sued to recover seven thousand four hundred and forty-one sheep of a certain brand, described in the complaint, of the value of two dollars per head. On trial it was expressly agreed as follows, to wit: "The value of each head of sheep was admitted to be two dollars per head, and it was admitted that there was no dispute as to the number of sheep purchased by A. J. Knollin & Co. of Boyd & Litts, if they purchased any, and that the number that they purchased, and took in the first instance under such purchase, was seven thousand four hundred and forty-one sheep, of the value of two dollars per head." The verdict complained of is in words and and figures as follows, to wit: "We, the jury in the above-entitled cause, find for the plaintiff for the return of the property set forth in the complaint, or, if return cannot be had, then the value of the same, which we assess at two dollars per head." We think that under the pleadings, and under said situation, verdict "can be understood."

The fifth assignment of error is based upon alleged errors in giving instructions to the jury. We have carefully examined the instructions, and think that they, in the main, gave to the jury the law of the case correctly. The instructions were to the effect that the mortgagors, with the written consent of the mortgagee, could sell the mortgaged property so as to relieve it of the mortgage lien; that consent to sell a specified portion only did not give consent to sell other portions not specified. And, at the request of the appellants, the court instructed the jury that a sale of any portion of the mortgaged chattels by the mortgagors, without the written consent of the mortgagee, would be void. This is not the law, as such sale would convey the title subject to the mortgage lien.

The court also instructed the jury, at the instance and request of the appellants, that "if the mortgagor is permitted to

sell the mortgaged property by the mortgagee on condition that the mortgagee shall receive all the proceeds of the sale, and release the property from the mortgage if requested so to do, such proceeding does not invalidate the mortgage." It is now contended that the instructions are contradictory, for which reason a reversal should be had.

The last instruction is, apparently, in conflict with the main instructions, but such conflict is one in appearance only. Such consent on the part of the mortgagee to a sale by the mortgagor waives the lien of the mortgage to the extent of the sale so made, but does not invalidate the mortgage, or waive the lien thereof, as to the unsold mortgaged property. This instruction being asked by the appellants, they cannot now be heard to complain thereof.

The instruction that the sale of any portion of the mortgaged property by the mortgagors, without the written consent of the mortgagee, is void, is erroneous, as above stated; but, being requested by the appellants, they will not be heard now to complain, and especially so as it could and did do the appellants no harm. The verdict cannot be disturbed on account of said instructions. Whatever error was made in giving the instructions was in favor of, and not prejudicial to, the appellants.

The appellants contend that their motion for a new trial should have been granted because they had newly discovered evidence. We have carefully examined the affidavits of the witnesses used on the motion for new trial, and think that the so-called newly discovered evidence is, in the main, cumulative, and that none of it was beyond the reach of the appellants, who, by proper diligence, could have produced it at the trial. The affidavits do not show such surprise as will warrant the granting of a new trial. We think that the district judge did not, in denying the motion for a new trial, abuse that discretion vested in him by law, and we are not warranted in reversing the said order upon this ground.

Appellants contend that the verdict should be set aside, and a new trial granted, because women were drawn upon a regular panel of the jury. It is argued that women are not competent jurors in this state. Conceding this to be the law, can we re-

verse this case, and send it back for a new trial, simply because women were drawn and summoned on the panel of the jury? The record shows that no woman served on the jury that tried this case. It does not appear that the appellants were prejudiced by reason of the fact that women were summoned on the regular panel, as they did not exhaust their peremptory challenges. Their rights were not affected, and we cannot reverse for errors which do not prejudice the substantial rights of the complaining party. Having accepted the jury while they yet had peremptory challenges which they had not exercised, appellants should not be heard to complain, after verdict, that women were drawn and summoned on the regular panel. For the reasons herein stated, the judgment and order denying the motion of the appellants for a new trial, appealed from, are hereby affirmed, with costs of appeal to the respondent.

Huston, C. J., and Sullivan, J., concur.