(January 5, 1907.)

# STATE, Respondent, v. CHARLES H. BARBER, Appellant.

## [88 Pac. 418.]

WHEN COURT MAY APPOINT SUITABLE PERSON TO PERFORM DUTIES OF COUNTY ATTORNEY—ORDER FOR GRAND JURY MAY BE MADE BY DISTRICT JUDGE—COURT MAY ORDER AN OPEN VENIRE FOR PETIT-JURY—PEREMPTORY CHALLENGES—MAY SHOW FEELING OF HATRED OF WITNESS TOWARD DEFENDANT.

1. Under provisions of section 2 of the act entitled "Fixing the qualifications and prescribing the powers and duties of county attorneys" (Sess. Laws 1897, p. 74), the court can only appoint a suitable person to perform, for the time being, the duties of a county attorney upon the happening of some one of the reasons that disqualify the county attorney from performing his duties as provideu for in that act.

2. Under the provisions of section 7, page 186, Session Laws of 1891, the judge of the district court may order a grand jury to be drawn as provided by law for any county of his district. It is not necessary that such order be made by the court.

3. Under the provisions of section 3961 of the Revised Statutes, the court or judge may order an open venire to issue for such number of persons as may be required to appear for service at any term of court in his district.

4. When it is made to appear that the sheriff is disqualified from the service of any process in his county, the office is disqualified, and it is error to permit any deputy of such sheriff to serve any process wherein the sheriff is disqualified.

5. If a jury has been improperly summoned or summoned by an officer who is disqualified from serving the venire, or for any reason is an unlawful jury, in such case the exercise by the defendant of his peremptory challenges would not cure the defect, and he is not in such case compelled to exercise such challenges.

6. The accused may show feeling of hatred toward him of any witness for the prosecution, in order that the jury may determine to what extent the witness may color his testimony in favor of the prosecution.

7. It is immaterial what the duties of a witness in a certain occupation may be, the only question being what his opportunities were for knowing whereof he testifies.

8. The relative size and physical condition of deceased as well as defendant may be shown ordinarily, but it must be done by statement of facts and not by conclusion.

9. The statements of deceased three days after the affray, unless they are shown to be his dying disclosures, are inadmissible.

10. Uncommunicated threats are not admissible where there is no dispute as to who was the aggressor in the affray; they may be admitted when that question is mooted, or where there are no eye-witnesses to show who was most likely the aggressor.

11. When a defendant offers himself as a witness in his own behalf, he can only relate the facts, and not his conclusions; hence a question, "Did you go into the saloon that night for the purpose of bringing on a fight between yourself and Charlie?" is objectionable.

12. The general reputation of deceased for peace and quiet, unless known to the defendant at the time of the affray, or where the question is in doubt as to who was the aggressor, is inadmissible.

13. Section 7668 of the Revised Statutes of 1887 requires that the names of witnesses for the prosecution shall be indorsed on the indictment, and it is error to permit a witness to testify unless his name appears in the indictment or information, even though such witness be called in rebuttal. The same requirement is made as to information. (Sess. Laws 1899, p. 125.)

14. Where the court fully and fairly instructs the jury on all the issues revealed in the prosecution, it is not error to refuse requests for instructions offered by appellant.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District for Washington County. Hon. Frank J. Smith, Judge.

Defendant was indicted by a grand jury, tried and convicted for manslaughter; sentenced to seven years in the state prison. This appeal is from the judgment and order overruling a motion for a new trial. *Judgment reversed.*

Lot L. Feltham, for Appellant.

Since the passage of the county attorney act of 1897, the court can appoint another person to perform the duties of the county attorney only upon the happening of one of the conditions mentioned in section 2 of said act (page 74). No such condition existed in this case, and the court presumed upon the law when it stated in the record that, "It appearing to the court that a necessity exists therefor, the

prosecuting attorney being engaged in other matters, the court orders that Bertram S. Varian is appointed prosecuting attorney, etc.'' Nowhere does it appear that George P. Rhea was absent, or had acted as counsel for the accused, or was next of kin, or was unable to attend to his duties from sickness or other disability, or that there was any legal reason why the appointment should be made.

The grand jury was not summoned upon the order of the district court, as required by section 8 of article 1 of the constitution of Idaho, but was illegally ordered drawn by the district judge in chambers outside of Washington county. A judge in chambers is not a court, and under said section 8 has no authority to order a grand jury drawn. The grand jury must be selected in the manner prescribed by law. (*Bruner v. Superior Court,* 92 Cal. 239, 28 Pac. 341.)

Permission cannot be properly granted to an attorney, employed to assist in the prosecution, to go before the grand jury and there act for the district attorney in framing the indictment. (*Durr v. State,* 53 Miss. 425; *State v. Addison,* 2 S. C. 356; *United States v. Farrington,* 5 Fed. 343; Thompson & Merriam on Juries, p. 584, sec. 3, p. 686, secs. 633, 634; *State v. Heaton,* 21 Wash. 59, 56 Pac. 843; *Lewis v. Wake County,* 74 N. C. 194-198.)

The presence of a person before the grand jury who is not authorized by law is highly improper, and must be taken advantage of by motion to quash before trial. (*State v. Justus,* 11 Or. 178, 50 Am. Rep. 470, 8 Pac. 337.)

The defendant objected to the calling of a petit jury by the sheriff on an open venire to try this case, because of the bias and prejudice of the sheriff. But if there had not been bias or prejudice against defendant on the part of the sheriff, it still was the right of defendant to have a jury drawn from the regular jury-box made up by the board of commissioners, and no reason appears from the records in this case for the court's refusal. (Rev. Stats., secs. 3947-3951; Const., sec. 18, art. 1.)

It was assumed by the court when it placed an open venire in the hands of the deputy sheriff, that it had avoided the

criticism of the defendant that the sheriff was biased and prejudiced against him, and that the deputy sheriff was free from this charge. The act of the deputy is the act of the principal, and the principal being prejudiced and disqualified, and the deputy being subject to the control of the principal, the deputy is for the same reason disqualified and unfitted to serve the process. (*People v. Enwright*, 134 Cal. 527, 66 Pac. 725; 12 Ency. of Pl. & Pr. 273, 274, also p. 336; Rev. Stats., secs. 1887, 2085.)

It is apparent from the record that the defendant did not exhaust his entire peremptory challenges; his right to ten peremptory challenges was made useless, and could avail him nothing because the talesmen were subject to the same objection as these jurors already in the box. (*People v. Dunn*, 1 Idaho, 74; *Simmons v. Cunningham*, 5 Idaho, 421, 39 Pac. 1110.)

In the cross-examination of plaintiff's witness, H. N. Macomb, effort was made to show his feeling of animosity and hatred against the defendant. The interest and feeling of a witness are always material elements to be considered by the jury in weighing his testimony. (*People v. Gregory*, 120 Cal. 16, 52 Pac. 43; *State v. Crea*, 10 Idaho, 88, 76 Pac. 1013.)

"It is error to refuse to allow defendant to state what kind of man deceased was physically." (*Stephenson v. State*, 110 Ind. 358, 59 Am. St. Rep. 216, 11 N. E. 360; *Hurd v. People*, 25 Mich. 404; *State v. Shafer*, 22 Mont. 17, 55 Pac. 527; *State v. Crea*, 10 Idaho, 88, 16 Pac. 1013.)

Where the homicide was committed in the course of an altercation, and accused pleads self-defense, threats by the deceased, not communicated to defendant, are admissible, and it was error for the court to refuse proof of them. (*State v. Cushing*, 14 Wash. 527, 53 Am. St. Rep. 883, 45 Pac. 145; *Babcock v. People*, 13 Colo. 515, 22 Pac. 817; *People v. Farley*, 124 Cal. 594, 57 Pac. 571; *State v. Tarter*, 26 Or. 38, 37 Pac. 53.)

Where there was evidence that deceased was the assault-ing party, it was competent to prove that the general reputa-tion of deceased for peace and quiet was bad, under a plea of self-defense. (*State v. Shaffer*, 22 Mont. 17, 55 Pac. 527; *State v. Shadwell*, 22 Mont. 559, 57 Pac. 281; *Davidson v. People*, 4 Colo. 145; *State v. McGann*, 8 Idaho, 40, 66 Pac. 825; *State v. Ellis*, 30 Wash. 369, 70 Pac. 963; *State v. Crea*, 10 Idaho, 88, 76 Pac. 1013; *People v. Lamar*, 148 Cal. 564, 83 Pac. 993; *State v. Burton*, 63 Kan. 602, 66 Pac. 633; *Kirk v. Territory*, 10 Okla. 46, 60 Pac. 797.)

No excuse was given by the state's attorneys for leaving the name of witness Ransopher off the indictment, and no request was ever made to put his name upon it. The court overruled defendant's objections, and permitted the witness on rebuttal to recite his view of what took place during the affray. This witness should have been called by the state, if they wanted his testimony, before the state rested, thus giving the defendant an opportunity to cross-examine him before the defendant was required to offer any testimony in defense. (Rev. Stats., sec. 7855.)

J. J. Guheen, Attorney General, and Edwin Snow, for Respondent.

There is in this case no pretext or claim that Mr. Varian obtruded himself before the grand jury without request or permission. There is no showing of prejudice or harm that resulted to the defendant by reason of Mr. Varian act-ing instead of the county attorney. The appellant was not injured in the slightest degree by the fact that Mr. Varian acted, and it is clear that he was a substitute, duly appointed under the law, who had taken the solemn oath to discharge the duties imposed upon him. (*State v. Corcoran*, 7 Idaho, 220, 61 Pac. 1034.)

The presence in the grand jury-room of a person who is not authorized to be present is not a ground for quashing the indictment, unless it appears that the defendant was injuriously affected thereby. (*State v. Bates*, 148 Ind. 610.

48 N. E. 2; *State v. Bacon,* 77 Miss. 366, 27 South. 563; *State v. Brewster,* 70 Vt. 341, 40 Atl. 1037, 42 L. R. A. 444; *Sims v. State* (Tex Cr. App.), 45 S. W. 705.)

There is no obligation resting upon the district courts to have juries selected from the commissioners' lists. (Rev. Stats., sec. 3961.) The discretion is absolutely with the court as to whether he shall or shall not have a jury drawn for the term. He may, in his discretion, wait until the necessity arises and draw a jury by open venire. (*People v. Vincent,* 95 Cal. 425, 30 Pac. 581; *Thrall v. Smiley,* 9 Cal. 529; *Lehee v. Southern Pac. R. R. Co.,* 65 Cal. 150, 30 Pac. 662; *People v. Davis,* 47 Cal. 93; *People v. Williams,* 43 Cal. 344; *People v. Rodreguez,* 10 Cal. 50; *Simmons v. Cunningham,* 4 Idaho, 426, 39 Pac. 1109.)

Where the record shows that the complaining party accepts the trial jury without exhausting his peremptory challenges, he should not then be heard to object to the panel. (*Knollin v. Jones,* 7 Idaho, 466, 63 Pac. 638; *State v. Gordon,* 5 Idaho, 298, 48 Pac. 1061.)

Uncommunicated threats are sometimes admitted in evidence where the plea is self-defense, where the circumstances of the killing are shrouded in obscurity, and it is not clearly evident which party was the aggressor. Such is not the case in the action at bar. The altercation took place in the presence of more than half a dozen persons.

If the threats had been communicated, they would have been clearly admissible, for the reason that they might show what danger the defendant had reasonable cause to apprehend in an encounter with the deceased. But being uncommunicated, they could have no possible effect upon his mind, and they could have no possible bearing upon the circumstances of the encounter, because upon these circumstances there was no dispute. Their only purpose, then, would be simply to prejudice the mind of the jury in favor of the defendant, and they were, therefore, properly excluded. (*Powell v. State,* 19 Ala. 577; *Rogers v. State,* 62 Ala. 170; *Coker v. State,* 20 Ark. 53; *Vanne v. State,* 83 Ga. 44, 9 S. E. 945; *State v. Faile,* 43 S. C. 52, 20 S. E. 798; *State v.*

*Dumphy*, 4 Minn. 438; *State v. Malloy*, 44 Iowa, 104; *State v. Elliott*, 45 Iowa, 486; *State v. Sullivan*, 51 Iowa, 142, 50 N. W. 572; *State v. McCoy*, 29 La. Ann. 593; *State v. Ryan*, 30 La. Ann. 1176; *State v. Chavallier*, 36 La. Ann. 81; *State v. Vaughan*, 22 Nev. 285, 39 Pac. 733.)

Testimony as to the general reputation of the deceased for peace and quiet was inadmissible. There was nothing in the record to indicate that such reputation, if it existed, was known to the defendant. The fact that there were numerous eye-witnesses to the altercation which led to the homicide made it entirely incompetent. (*Redus v. People*, 10 Colo. 208, 14 Pac. 323; *State v. Rollins*, 113 N. C. 722, 18 S. E. 394; *State v. Nash*, 45 La. Ann. 1137, 13 South. 732-734.)

STOCKSLAGER, C. J.—Appellant was indicted by a grand jury of Washington county, charged with the murder of one Charles Macomb on the twenty-third day of December, 1905. A trial was had in February, 1906, which resulted in a verdict of manslaughter. He was thereafter sentenced to serve a term of seven years in the state penitentiary. A motion for a new trial was overruled and the appeal is from this order and also from the judgment.

Counsel for appellant assigns twenty-eight errors, many of which relate to the giving of instructions and the refusal to give instructions requested on behalf of defendants.

The first assignment relates to the refusal of the court to quash the indictment on the ground that it was found by a grand jury under circumstances not authorized by law. It appears from the record that on the twenty-second day of January, 1906, the court then being in session in Washington county, the following order was made by the court: "It appearing to the court that a necessity exists therefor, the prosecuting attorney being engaged in other matters, the court orders that Bertram S. Varian is appointed prosecuting attorney to attend upon and perform the duties of prosecuting attorney with the grand jury during this term of court at a compensation to be fixed hereafter by the

court.'' It is insisted that this order was made without
authority, and that the appearance of Mr. Varian before the
grand jury was illegal, and that the indictment so found
and returned should have been quashed on the motion of
counsel for appellant. The latest authority we find for the
appointment of a county attorney is in the Session Laws
of 1897, page 74. This is the act that changed the system
from district attorneys for each judicial district to a county
attorney for each county. Section 2 of this act provides
the way and under what conditions and circumstances the
court may appoint an attorney to perform the duties of the
county attorney. It is as follows: ''Section 2. When there
is no county attorney for the county, or when he is absent
from the court, or when he is acting as counsel or attorney
for the accused in relation to the matter of which the ac-
cused stands charged, and for which he is to be tried on a
criminal charge, or when he is near of kin to the party to be
tried on a criminal charge, or when he is unable to attend to his
duties, the district court may, by an order entered in its min-
utes stating the cause therefor, appoint some suitable person to
perform for the time being, or for the trial of such accused
person, the duties of county attorney, and the person so ap-
pointed has all the powers of the county attorney, while act-
ing as such.'' It is shown that at the time this order was
made, George P. Rhea was the county attorney of Washing-
ton county. It is urged by learned counsel for appellant
that it is not shown by the order complained of that Mr.
Rhea was in any manner disqualified from performing all
the duties of county attorney of his county as contemplated
by section 2 above quoted; hence, the order was without au-
thority and in direct contravention of the statutes, illegal
and void. Subdivision 4, section 3, provides that the county
attorney shall ''attend, when requested by any grand jury
for the purpose of examining witnesses before them, to draw
bills of indictments, informations and accusations; to issue
subpoenas and other process requiring the attendance of
witnesses.'' It would seem from this section that the county
attorney can only be present with the grand jury ''when re-

quested." In our view if the court had the authority to appoint Mr. Varian under section 2, *supra,* he was empowered to appear before the grand jury "when requested," and for the purposes enumerated in section 3. The important question presented by this motion is: Was there any reason given in the order why Mr. Rhea should not perform all the duties of his office? The necessity therefor, as stated in the order, must be coupled with a reason based on some provision of the statute, and the fact that the "county attorney was engaged in other matters" is not one of the reasons given by section 2 for the appointment of an attorney who "has all the powers of the county attorney while so acting as such." It was not the intention of the legislature that there should be a county attorney in the active discharge of his duties and at the same time an attorney performing a part of them in some other branch of the county government. The section requires that the order must show the disqualification or inability of the county attorney to act in some particular matter connected with his office or the duties thereof. If the theory of the prosecution is to be upheld, the county attorney of any county may shirk the responsibilities and labors of his office, have an attorney appointed to perform the labor, draw his salary, and the county will be required to pay two men for the labor enjoined upon the county attorney by statute. It is not enough to say that the court would not make the order unless there was good reason for it; this is doubtless true, but the legislature, by section 2, was careful in fixing the only conditions under which the court may appoint an attorney to perform the duties of the county attorney, and the fact that the county attorney was otherwise engaged when the appointment was made does not bring it within the power of the court to appoint under section 2, *supra.*

It is insisted by the attorney general that *State v. Corcoran,* 7 Idaho, 220, 61 Pac. 1034, is decisive of this question. We think not. It is stated in the opinion by Mr. Justice Quarles that "the county attorney of said county [meaning Shoshone] stated in open court that he was disqualified from

acting as county attorney, and that he was unable to attend to the duties of said office in matters connected with or growing out of the alleged riots of April 29, 1899, in Shoshone county. It is evident to our minds that said county attorney was unable to discharge the duties of his said office within the meaning and intent of the act of February 2, 1899.''

It is nowhere apparent by the record in this case that Mr. Rhea was in any way disqualified or ever requested the appointment of an assistant in the performance of his duties. The court is aware that there could be no valid objection to the appointment of Mr. Varian so far as his character or ability is or was concerned, but the question is: Did the statute authorize the appointment of anyone under the showing? The attorney general quotes from the opinion in *State v. Corcoran, supra,* as follows: "It would be an idle thing to provide that in the case of the disability of the county attorney to perform his duties, the court should appoint a suitable person to discharge his duties and then hold that such appointee has no authority to act in the performance of such duty. The reason, object and necessity of the grand jury having the services and assistance of the county attorney continues, notwithstanding that the county attorney is incapacitated from acting before the grand jury. . . . . It is evident that it was the intention of the legislature that where the county attorney was disqualified from acting in a certain case, the person appointed to perform his duties should discharge all of them. It follows that the indictment should not be set aside, because the substitute for the county attorney appointed by the court was before the grand jury during the examination of the witnesses.'' We are in full accord with all that this quotation contains. The county attorney came into open court and stated that he was disqualified from acting in the matters growing out of the alleged riots; and it is apparent that the grand jury was called to investigate any crimes that may have been committed at that time. It is further apparent that during the time Mr. Forney, who had been appointed by the court to discharge

the duties of the county attorney of Shoshone county, was the only officer pretending to perform the duties of county attorney of Shoshone county. With such conditions existing, there is no doubt of the legality of the appointment, and the right of Mr. Forney to appear before the grand jury when called upon by that body, as provided for in section 2, *supra.* In *State v. Heaton,* 21 Wash. 59, 56 Pac. 843, Mr. Justice Reavis discusses the power of the court to appoint special counsel to attend the grand jury. In this case the prosecuting attorney had formerly recommended the dismissal of an indictment. Another grand jury was impaneled to reinvestigate the accused. The court appointed special counsel to attend the grand jury. After the return of the grand jury was made the prosecuting attorney appeared in court and requested that he be permitted to advise with the grand jury and comply with his duties as prosecuting attorney; the judge disregarded the request and ordered that special counsel act as adviser of the grand jury. The court unanimously held that the lower court erred in the appointment of special counsel. It is said: ''By statute the duties of the prosecuting attorney are prescribed. He is to have supervision and charge of all criminal proceedings in his county, to sign all informations and draft indictments, and generally to institute and prosecute proceedings of a criminal nature.'' Again: ''The duties of the prosecuting attorney are prescribed by statute. His office is defined and his authority comes from the same source of power as does that of the court, and the functions of each are prescribed by law.'' It would seem from the conclusion reached in this case that in the opinion of that court there must be a substantial compliance with the statute in the appointment of counsel to represent the prosecuting officer of the county. In other words, there must be a disqualification of that officer or inability to act before anyone can be appointed to represent him in any capacity in the performance of his official duties.

The attorney general and his associates call our attention to *State v. Bates,* 148 Ind. 610, 48 N. E. 2. In this case it

is shown that the prosecuting attorney had a stenographer in the grand jury-room for the purpose of taking down the evidence in shorthand for the use of the prosecution. The court held that the presence of a stenographer for the purposes above stated was not error. In *State v. Bacon,* 77 Miss. 366, 27 South. 563, it was held that the presence of the bailiff in charge of the grand jury in the jury-room during a part of the time the jury were deliberating upon an indictment is not sufficient to quash the indictment. In *State v. Brewster,* 70 Vt. 341, 40 Atl. 1037, 42 L. R. A. 444, it was held that "the indictment will not be quashed because the state's attorney, with the consent of the court, is accompanied before the grand jury by a stenographer, . . . . no actual harm to the respondent being shown." In *Sims v. State* (Tex. Cr. Rep.), 45 S. W. 705, it again appears that the prosecuting attorney had a stenographer present in the grand jury-room to take certain testimony, and the court held that the presence in the grand jury-room of such stenographer, unless it be shown it was during the time they were "deliberating," was not sufficient error to warrant the arrest of the judgment. In all these cases it will be seen that it was not a question as to whether or not the prosecuting attorney appearing before the grand jury had the legal right to do so, but whether he, in his official capacity, could take a stenographer with him in the grand jury-room for the purpose of taking shorthand notes of evidence, and not thus violate the law. We think the courts are entirely justified in saying that unless it were to appear that the accused suffered in some way by the presence of the stenographer, that the action of the grand jury could not be disturbed.

In the case at bar the question is: Had the court the right to appoint anyone to appear before the grand jury for any purpose, when the plain provisions of the statute require the county attorney, and him alone, to appear before them when requested, and then only for certain purposes, when the only reason given is that the "county attorney was engaged in other matters"? We think not, and that the motion to quash should have been sustained.

Counsel for appellant also insists that the grand jury was not summoned upon the order of the district court as required by section 8 of article 1 of the constitution of Idaho, but was illegally ordered drawn by the district judge in chambers outside of Washington county. The constitutional provision above referred to is as follows: "No person shall be held to answer for any felony or criminal offense of any grade, unless on presentment or indictment of a grand jury or on information of a public prosecutor, after a commitment by a magistrate. . . . . . *Provided,* that a grand jury may be summoned upon the order of the district court in the manner provided by law." The order complained of was as follows: "Be it remembered that on the thirtieth day of December, 1905, the Honorable Frank J. Smith, judge of the above-entitled court, then sitting in chambers at Caldwell, Canyon county, Idaho, made, executed and caused to be filed in the clerk's office of the above-entitled court, in Washington county, Idaho, the following order, to wit: In the Matter of a Grand Jury for the January Term, 1906, of the District Court of the Seventh Judicial District, of the State of Idaho, in and for the County of Washington. Under and by virtue of the authority in me vested it is hereby ordered that a grand jury be drawn for the January term of the district court of the seventh judicial district of the state of Idaho in and for Washington county; that said grand jury shall consist of twenty (20) persons having the necessary qualifications, the names of which to be drawn from the jury-box as provided by law and made returnable at 11 o'clock on the sixteenth day of January, A. D. 1906. Frank J. Smith, Judge. Done at Chambers at Caldwell, Idaho, this thirtieth day of December, A. D. 1905." In making this order it is evident that the judge had in view section 7, page 186 of the Session Laws of 1891. The title of the act of which this section is a part is as follows: "To provide for prosecuting offenses on information and to dispense with the calling of grand juries, except by order of the district judges." The section reads: "Grand juries shall not hereafter be drawn, summoned or required to attend at the sittings of any court

within this state as provided by law, unless the judge thereof shall so direct by writing, under his hand and filed with the clerk of said court." Prior to the passage of this act the statute provided that "not less than fifteen or more than thirty days before the commencement of any term of the district court the judge thereof, if a jury will be required therefor, must make and file with the clerk an order that one be drawn. The number to be drawn must be fixed in the order; if to form a grand jury it must be twenty, and if a trial jury, such number as the judge may direct." (Rev. Stats., sec. 3952.) It is urged that this section of the 1891 act is in conflict with section 8, article 1 of our constitution, and counsel for appellant cites *Bruner v. Superior Court of the City and County of San Francisco et al.*, 92 Cal. 239, 28 Pac. 341. In that case the presiding judge made an order that twenty-five names be drawn in the usual way from the grand jury-box for the purpose of procuring a grand jury. After service by the sheriff on all who could be found, eighteen appeared, eight were excused for cause and the others were accepted. No further drawing from the grand jury-box was made. The court then made an order that nine good and lawful men be forthwith summoned by an elisor to complete the grand jury; they were accepted and thus the requisite number of nineteen were sworn. No reason was given why the jury was not completed by an additional drawing from the grand jury-box, nor was there any cause why when the other method of getting jurors was adopted, the sheriff was not ordered to summon them instead of an elisor. The court held that error was committed by the trial court, but in the long discussion it will be found that the serious objection to the formation of a grand jury in the manner this particular one was formed was in the appointment of an elisor; hence, has no bearing on the case under discussion. The object and purpose of the law in the case at bar was accomplished by the order of the district judge at chambers, as well as if he had made his order as a court while in session in Washington county. The language of the order would be the same, whether made by the court or the judge thereof. The duty

of the officers drawing from the box the number of names provided for in the order, and the duty of the sheriff in his service and return to the order, would be the same whether made by the judge or the court. All this being true, this case is relieved of the objectionable features found in *Bruner v. Superior Court of the City and County of San Francisco et al., supra.* The attorney general insists that "even if the constitution had been absolutely silent on the question of the summoning of a grand jury, courts would have the inherent power, under the common-law, to draw and summon such juries." We are disposed to agree with this contention. The entire object and purpose of the law is to have fair and impartial men selected for grand jury service, and so long as they are selected in the manner followed by the court or judge in this instance, it would seem that no one would have reason for complaint. The course pursued by the learned judge who made the order in this case has been followed, as we are informed, very generally by the district judges throughout the state since the enactment of the law of 1891, and we are unable to find when such a proceeding has ever been questioned in this court. This fact, of course, would not make the act legal, but it goes to show that the practice has been generally accepted by the bench and bar of the state since our first state legislature met after the adoption of our constitution. We find no error in this order of the court.

Counsel for appellant next urges as error the manner of selecting the petit jury. It seems that the court ordered an open venire to issue to the sheriff for a given number to appear at a day fixed in the order, and that appellant's counsel objected to this manner of securing a jury, and insisted on having the jury drawn from the jury-box made up by the county commissioners. He stated his reasons for the demand as bias and prejudice of the sheriff against appellant. If it were true that he could or did show bias and prejudice of the sheriff against the appellant, that officer should not have been permitted to serve the venire, nor should it have been served by anyone connected with his office. If the

sheriff was disqualified, the court could and should have appointed an elisor to serve the venire. That the court may order a jury drawn from the jury-box prepared by the county commissioners or order an open venire we think is entirely discretionary. Section 3961 of the Revised Statutes provides: "Whenever jurors are not drawn and summoned to attend any court of record, or a sufficient number of jurors fail to appear, such court may, in its discretion, order a sufficient number to be drawn and summoned to attend such court; or it may, by an order entered on its minutes, direct the sheriff of the county to summon so many good and lawful men of his county to serve as jurors as the case may require." At the time of the enactment of section 3961 there was good reason for the rule, and even now, in many of the large counties where the territory is sparsely settled, it is very incon· venient, as well as expensive, to bring jurors to the county seat for jury service when frequently there are but one or two cases for the jury. We know the practice has been quite usual in many of the counties of southern Idaho since we were admitted as a state, and the personal experience of the writer in the fourth judicial district was convincing that only good results followed. We find no error in this ruling of the court.

Another error assigned is the ruling of the court on the objection to the service of the venire by the sheriff for the reason of alleged bias and prejudice on the part of that officer against appellant. We do not think the showing was sufficient to disqualify that officer from service of the process; however, the court discharged the jurors returned as served by the sheriff and ordered another venire to issue, and ordered it placed in the hands of one of the sheriff's deputies. This was error; if the sheriff was disqualified, the entire force of his office was disqualified. The assistant attorney general insisted in his oral argument in this court that the appellant, having accepted the jury by not exercising all of his peremptory challenges, cannot now be heard to complain that he did not have a fair and impartial jury, and hence a fair and impartial trial guaranteed to him by the constitu-

tion. In *State v. Gordon*, 5 Idaho, 297, 48 Pac. 1061, Mr.
Justice Huston said: "Under the statute the defendant had
ten peremptory challenges. He exercised but three. Coun-
sel for defendants in criminal actions are prone to rely too
much upon mere technical objections." Again, in *Knollin
v. Jones, Sheriff*, 7 Idaho, 466, 63 Pac. 638, Mr. Justice
Quarles said: "A new trial should not be granted upon the
ground that an incompetent juror was drawn upon the panel,
where the record shows that the complaining party accepted
the trial jury without exhausting his peremptory challenges."
We think this rule well founded. If a defendant exercises
all his peremptory challenges, he has made every effort in
his power to secure a fair and impartial jury. If he has
failed in securing a jury as contemplated by law, he should
have the court's assistance and a new trial if bias or preju-
dice is shown on the part of the court or any of its officers.
If a jury has been improperly summoned, or for any rea-
son is an unlawful jury, then and in that case the exercise
by the defendant of all his peremptory challenges would not
cure the defect of irregularity, nor would he be compelled to
exercise them in such case.

Appellant's assignments 6, 7, 8 and 9 relate to the cross-
examination of state's witness H. N. Macomb, brother of the
deceased and joint proprietor of the saloon in which the
homicide was committed. By a number of questions asked
the witness by counsel for appellant to which objections were
made by the prosecution and sustained by the court, it was
scught to show the feeling of animosity and hatred, as stated
by counsel for appellant, of the witness against appellant.
The defendant in a criminal action has the undoubted right
to show the feeling of any witness against him; this he may
do by cross-examination as to his feeling or anything he may
have said with reference to the accused. The jury should
have the benefit of this information in order to determine
the weight to be given to his evidence. (*State v. Crea*, 10
Idaho, 88, 76 Pac. 1013; *People v. Gregory*, 120 Cal. 16, 52
Pac. 43.)

Idaho, Vol. 13—6

The tenth assignment relates to the cross-examination of William Percifield, a witness for the state. It was shown that his occupation was bar-tending, and had been for the past sixteen years. He was behind the bar at the time of the homicide, and related what he had seen during the difficulty that led up to the homicide. On cross-examination he was asked, "What were your duties there that night at the time this affray took place?" Counsel for the prosecution objected to an answer to this question, for the reason that the same is immaterial and irrelevant, which objection was sustained. We find no error in this ruling. It was immaterial what his duties were; the question was, what were his opportunities to see the parties during the affray or immediately before or after, and this information could have been obtained by cross-examination, irrespective of his duties as bar-keeper.

The eleventh assignment relates to the cross-examination of Forest Gammett. On cross-examination he was asked, "What was the appearance between the two men as to which was the superior in power—fighting force?" Again, "Which man appeared to have the mastery, if either of them did, over the other?" To both of these questions the prosecution objected, for the reason that the same are incompetent and immaterial, which objections were sustained. The witness testified that he was pretty well acquainted with Charlie Macomb, and said, "I should judge that he was a man of about one hundred and eighty pounds, of eighty some odd." These questions called for the conclusion of the witness. He could relate all the conditions and circumstances of the affray, and from that the jury could determine as to "which was the superior in power, fighting force"; also "which man appeared to have the mastery, if either of them did, over the other." It is shown by the record that the relative size, age and weight of both men was before the jury by the evidence of witnesses, and if it was material, they were in possession of facts to determine the question without resort to the conclusion of a witness. We do not wish to be understood as holding that the defendant could not show

the relative size, age and physical condition of deceased as compared with himself, but it must be done by unobjectionable questions that do not call for the conclusion of the witness.   We find no error in the ruling of the court on this as-, signment of error.

The twelfth assignment relates to the offer of proof by Dr. Youngblood of certain statements made to him or in his presence three days after the affray in the saloon.   The prosecution objected to this evidence, for the reason that it was incompetent, irrelevant and immaterial, and because the proper foundation had not been laid.   The objection was sustained.   The witness had stated that deceased had told him all about how it started, explained how it started at the hall, the starting of the fuss; the question was then asked, "What statement, if any, did he make in regard to the defendant Barber being prosecuted?"   We cannot see how this evidence could be competent.   The statement of the deceased, unless a dying declaration, would not be admissible on the trial.   We find no error in this ruling of the court.

Errors 13, 14 and 16 are discussed together, and relate to the offer by appellant of the evidence of Jim Blades, Riley Potter and C. T. Reavis, relative to certain alleged threats made by deceased toward appellant on the night and previous to the homicide.   It is not pretended that these threats were communicated to appellant, but counsel for appellant insists that "where the homicide was committed in the course of an altercation, and accused pleads self-defense, threats by the deceased not communicated to defendant are admissible"; and in support of this contention cites *State v. Cushing,* 14 Wash. 527, 53 Am. St. Rep. 883, 45 Pac. 145; *Babcock v. People,* 13 Colo. 515, 22 Pac. 817; *People v. Farley,* 124 Cal. 594, 57 Pac. 571; *State v. Tarter,* 26 Or. 38, 37 Pac. 63.   In *State v. Cushing, supra,* Mr. Justice Gordon, in his statements of the facts, says: "The appellant admits that he did the shooting which caused the death of the deceased, but claims that he did it in self-defense.   The shooting occurred upon the premises of the appellant, near the city of Spokane.   There were no eye-witnesses to the fatal encounter."

The opinion reverses the lower court and holds that an instruction requested by appellant, to wit: "Uncommunicated threats are only valuable in a case of this kind as tending to show the feelings and intents of deceased toward the defendant at the time of their encounter and whether or not the deceased was the first assailant." This, we think, states the correct view. Where the evidence does not show who was the aggressor, and there were no eye-witnesses, and the defense is self-defense, then uncommunicated threats may be admissible if they will throw any light upon the affray, or aid the jury in any way to determine to what extent they would justify the accused in his plea of self-defense. The facts in this case and the one at bar are widely different. There were a number of eye-witnesses to all that was said and done by the parties to the fatal affray in the saloon on the night of the occurrence; they do not differ materially as to any of the facts, hence no uncommunicated threats would aid the jury to determine who was the aggressor. In *Babcock v. People, supra,* the question before us is not discussed. We quote from the opinion: "The court did not err in striking out a portion of the testimony of the witness Case. The threats to which his testimony related were not only never communicated to the defendant, but they do not appear to have related to him. If they had been directed against the defendant, the fact that they were not communicated would not have rendered them irrelevant in a case like this, where the question was, Who commenced the deadly affray?" In *State v. Foster, supra,* an Oregon case, the facts as stated in the first clause of the syllabus are as follows: "Defendant and two others [eye-witnesses] testified that the deceased was the aggressor and had a pistol; that he swore he would kill defendant, and was drawing his pistol to do so, when defendant fired. The state's evidence went to show that deceased was unarmed and not the assailant; that he made no hostile move against defendant; and that the shooting was deliberate. *Held,* that it was competent to prove deceased's previous threats against defendant though not communicated to him." Here again the

question as to who was the aggressor was directly involved by the conflicting testimony, and the uncommunicated threats were admissible to clear up that question, if possible. That uncommunicated threats are not admissible when there is no question as to who was the aggressor, and all the facts of the encounter are practically without question or dispute, see *Powell v. State,* 19 Ala. 577; *Rogers v. State,* 62 Ala. 170; *Coker v. State,* 20 Ark. 53; *Vance v. State,* 83 Ga. 44, 9 S. E. 945; *State v. Faile,* 43 S. C. 52, 20 S. E. 798; *State v. Dumphey,* 4 Minn. 438; *State v. Malloy,* 44 Iowa, 104; *State v. Vaughn,* 22 Nev. 285, 39 Pac. 733. We find no error in the ruling of the court on the rejection of this evidence.

Assignment 15 deals with an offer on behalf of appellant to show by the testimony of Fred Tinsley certain acts and statements of the witness· Newt. Macomb against defendant. It is not stated when those statements were made, and no showing that whatever they may have been they were communicated to appellant; hence inadmissible, and no error in this rejection.

Alleged error 17 is based on the refusal of the court to permit appellant while testifying to answer the following question: "Did you go into the saloon that night for the purpose of bringing· on a fight between yourself and Charlie?" Prior to this question the witness had related what had happened at the dance given in the hall that night, conversations between himself, the deceased and others, and with reference to going into the saloon he had said: "At that time that I went into the saloon I did not anticipate any trouble with Charlie. When I fell into the window I thought it was necessary to defend myself at that time. The fight was not brought on by me in any way." It seems that the witness had been given an opportunity to relate all that happened on that night, both at the dance-hall prior· to the affray and at the saloon. From his statements and the evidence of other witnesses the jury were to ascertain his motives in going to the saloon. He was permitted to relate all the facts and the jury should determine his motives. There was no error in this ruling.

Alleged errors 18 and 19 relate to the ruling of the court in not permitting appellant to prove the general character of the deceased for peace and quietness. It is nowhere shown in the record that at the time of the affray appellant had any knowledge or information as to the reputation of deceased for peace and quietness. The evidence was properly rejected.

Error 20 recites that after the case had been presented by the state and defendant, the prosecution called one Elmer E. Ransopher as a witness in rebuttal, who was permitted over the objection of defendant to testify to all he saw and heard in the saloon during the affray. That the name of this witness was not indorsed on the indictment at the time he was called, nor was it ever indorsed thereon, neither did the prosecution request that it should be so indorsed on the indictment; that counsel for appellant objected to the witness' testifying for the reason above set forth, and called the court's attention to the fact that his name was not upon the indictment. Section 7668 of the Revised Statutes provides: "When an indictment is found, the names of the witnesses examined before the grand jury, or whose depositions may have been read before them, must be inserted at the foot of the indictment, or indorsed thereon, before it is presented to the court." We think this provision of our statute is mandatory, and should be enforced at all times in prosecutions either by indictment or information. When a party charged with crime is upon trial, he has a right to know who the witnesses are against him, and if during the trial the prosecution obtained information that another witness or other witnesses are essential to a successful prosecution, he should be required by the court to show where he obtained the information, and if the showing is sufficient, then the court should order the name or names placed on the indictment or information without delay. It was error to permit this witness to testify without his name being placed on the indictment. The rule here laid down as to the indorsement of names of witnesses on an indictment also applies to informations. Section 2 of "An act to provide for prosecut-

ing offenses on information and to dispense with the calling of grand juries except by the district judges,'' approved February 6, 1899 (Sess. Laws, p. 125), is as follows: ''Sec. 2. All informations shall be filed during term, in the court having jurisdiction of the offense specified therein, by the district attorney as informant; he shall subscribe his name thereto and indorse thereon the names of the witnesses known to him at the time of filing the same; and at such time before the trial of any case as the court may by rule or otherwise prescribe, he shall indorse thereon the names of such other witnesses as shall then be known to him.'' Under the provision of that section this court held in *State v. Crea,* 10 Idaho, 88, 76 Pac. 1013, that the prosecuting attorney is required to indorse on the information the names of all witnesses known to him at the time of filing the same, and when it was sought to have the names of other witnesses indorsed thereon after the same had been filed, the court must be satisfied that the names of such witnesses were not known to the prosecuting attorney at the time the information was filed, before such names were allowed to be indorsed thereon. (Also see *State v. Wilmbusse,* 8 Idaho, 608, 70 Pac. 849; *State v. McGann,* 8 Idaho, 40, 66 Pac. 823; *State v. Rooke,* 10 Idaho, 388, 79 Pac. 82.) It was also error to allow the witness to relate the facts as they occurred when he was called in rebuttal. If the prosecution desired his testimony of all that occurred in the saloon at the time of the affray, the court should have required a showing to be made why the witness was not used in the trial in chief. On a proper showing it would not be an abuse of discretion to reopen the case and receive such testimony.

A number of errors are assigned based on instructions given and the refusal of the court to give certain ones requested by appellant's counsel. We have examined the instructions given by the court and think they fairly state the law. It is not error to give instructions requested by a defendant, nor is it error to refuse to give them when the court has instructed on all the issues involved and such instructions fairly state the law of the case.

We have already indicated that this case must be reversed, based on the first assignment of error, and it is so ordered. The case is remanded, with instructions to the lower court to sustain the motion to quash the indictment and thereafter to either discharge the defendant or submit the case to another grand jury in the discretion of the trial court.

Ailshie, J., and Sullivan, J., concur.