## STATE, Respondent, v. KENNETH McLENNAN, Appellant.

[231 Pac. 718.]

CRIMINAL PROCEDURE—CHANGE OF VENUE—WHEN PROPERLY DENIED—
INCRIMINATING EVIDENCE—WHEN LAWFULLY OBTAINED ADMISSIBLE
—CHALLENGE TO PANEL—PROVING THE CORPUS DELICTI—CIRCUM-
STANTIAL EVIDENCE—WHEN SUFFICIENT TO SUSTAIN CONVICTION—
REQUESTED INSTRUCTION—WHEN IMPROPER IN FORM SHOULD BE
REFUSED.

1. Granting a change of venue in a criminal action is largely within the discretion of the trial judge, and its denial will not be reversible error where it appears from the entire record that defendant had a fair trial.

2. It is not sufficient in support of a motion for change of venue to show that great prejudice exists against the accused; it must appear that the prejudice against him is so great as to prevent him from having a fair and impartial trial, and where the evidence in support of and against such motion is conflicting, and it further appears that the defendant did have a fair trial, the court's decision denying a change will not be reversed upon appeal.

3. Where one accused of having committed a homicide, by means of a gun, after his arrest is asked by the officers having

Publisher's Note.

3. Admissibility of evidence secured by search or seizure, see notes in 15 Ann. Cas. 1205; Ann. Cas. 1915C, 1182.

Points Decided.

him in custody if he has any firearms in his house and he replies that he has not had any in years, and gives the key to his house to one of the officers and tells them to search the same, and they do so and find a revolver concealed from view in the door casing, loaded, with the exception of one exploded shell, this evidence is not unlawfully obtained because the officers at the same time had a search-warrant authorizing them to search the house for contraband liquor.

4. Where one under arrest, charged with a felony, hands the key to his house to an officer, in the presence of the sheriff who has a search-warrant, and notifies such officers to search his house, no question arises as to the search being illegal, since the defendant voluntarily submitted to the search being made, and the evidence obtained by such search is admissible against the defendant.

5. C. S., sec. 8915, prescribing the grounds for a challenge to the panel, does not authorize such a challenge because the name of a juror was inadvertently misspelled in the summons requiring his attendance as a juror.

6. Prejudicial error will not be presumed, but it must affirmatively appear from the record that such error prevented the defendant from having a fair trial.

7. While a conviction for a crime cannot be had unless the *corpus delicti*, that is, the fact that a crime has been committed, is first established, this may be done by circumstantial evidence where such evidence is sufficient to exclude all uncertainty.

8. Where the body of a deceased person is found soon after death, caused by a gunshot wound, and all the circumstances show that the infliction of the wound was not the result of accident, or self-inflicted, the *corpus delicti* is sufficiently established.

9. Any fact which becomes material in a criminal prosecution may, as a rule, be established by circumstantial as well as by direct evidence, and circumstantial evidence alone will support a conviction if it produces a belief, beyond a reasonable doubt, in the minds of the jury that the accused is guilty.

10. While it is necessary, in order to sustain a conviction based solely on circumstantial evidence, that such circumstances shall be consistent with the guilt of the accused and inconsistent with his

7. Definition of *corpus delicti*, see note in 78 Am. Dec. 252.

Necessity of proof of *corpus delicti*, see note in 1 Ann. Cas. 823.

8. Proof of *corpus delicti*, in homicide, see note in 68 L. R. A. 35.

10. Necessity, for conviction, that circumstantial evidence exclude every reasonable hypothesis except guilt of defendant, see note in Ann. Cas. 1913E, 428.

innocence, and incapable of explanation on any other reasonable hypothesis than that of guilt, the evidence need not demonstrate the guilt of the defendant beyond the possibility of his innocence; and if the circumstances as proved produce a moral conviction to the exclusion of every reasonable doubt, they need not be absolutely incompatible with the innocence of the accused.

11. Circumstantial evidence is the proof of certain facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind. To render evidence of collateral facts competent there must be some natural, necessary or logical connection between them and the inference or result which they are designed to establish.

12. A request which instructs the jury that the absence of all evidence of an inducing cause or motive to commit the crime, when the fact is in reasonable doubt as to who committed it, affords a strong presumption of innocence, is objectionable in form, and the giving of the same should be refused.

13. Evidence considered and found sufficient to support the judgment of conviction.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

Judgment of conviction for second degree murder. *Affirmed.*

Clarence S. Hill, for Appellant.

Where it is shown that newspaper articles highly detrimental to the defendant have been published and distributed, and that the result of said publication and distribution was to create in the minds of the people of the county a widespread belief in the defendant's guilt, it is an abuse of discretion on the part of the trial court to deny a change of venue. (*State v. Perkins,* 36 S. D. 579, 156 N. W. 73; *Cox v. State,* 90 Tex. Cr. 106, 234 S. W. 72; *State v. Dwyer,* 29 Nev. 421, 91 Pac. 305; *People v. Suesser,* 132 Cal. 631, 64 Pac. 1095.)

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue without probable cause shown by affidavit, and particularly describing the place to be searched and person or thing to be

seized. (Const., art. 1, sec. 17; Const., 4th Amend.; C. S., sec. 9321; *Commonwealth v. Courtney*, 243 Mass. 363, 138 N. E. 16; *Hampton v. State*, 148 Tenn. 155, 252 S. W. 1007; *People v. Musk*, 221 Mich. 578, 192 N. W. 485.)

Before it can be held one has waived any of his constitutional rights, the court should be able to find that the intention of waiver is sustained by clear and positive testimony. (*United States v. Lydecker*, 275 Fed. 976; *United States v. Slusser*, 270 Fed. 818; *Amos v. United States*, 255 U. S. 313, 65 L. ed. 654; *Hampton v. State, supra; Veal v. Commonwealth*, 199 Ky. 634, 251 S. W. 648.)

Property taken from one as an incident to a lawful arrest must be taken by the arresting officer at the time and place of the arrest. (*United States v. Mounday*, 208 Fed. 186.)

Where it appears that there has been a material departure from the forms prescribed in respect to the drawing and return of the jury, or the intentional omission of the sheriff to summon one or more of the jury drawn, a challenge to the panel should be sustained. (C. S., sec. 8951.)

In order to sustain a conviction based solely on circumstantial evidence, the circumstances must be consistent with the guilt of the accused and inconsistent with his innocence, and incapable of explanation on any other reasonable hypothesis than that of guilt. (*State v. Marcoe*, 33 Ida. 284, 193 Pac. 80; *State v. Hurst*, 36 Ida. 156, 209 Pac. 724; *State v. Sullivan*, 34 Ida. 68, 199 Pac. 647; *State v. Blank*, 33 Ida. 730, 197 Pac. 821; *State v. Lumpkin*, 31 Ida. 175, 169 Pac. 939.)

Proof of the charge in criminal cases involves the proof of two distinct propositions; first, that the act itself was done, and secondly that it was done by the persons charged and no others. (*State v. Sullivan, supra.*)

The *corpus delicti* in a homicide case must be proven beyond a reasonable doubt, and the evidence must establish that the death was produced by the criminal act of some person and was not the result of accident or natural causes. (*Bryam v. People*, 49 Colo. 533, 113 Pac. 528.)

The admission in evidence of the revolver was error inasmuch as there was no evidence identifying it as an instrument used in causing the death of the deceased. (*State v. Kehr*, 133 Iowa, 35, 110 N. W. 149.)

The absence of motive for the killing of the deceased by the appellant in a case in which all of the evidence for conviction is circumstantial, is a circumstance to be considered in the appellant's favor, and he is entitled to an instruction to that effect, there being evidence to support the theory of no motive. (*Porter v. State*, 173 Ind. 694, 91 N. E. 340; *State v. Concelia*, 250 Mo. 411, 157 S. W. 778; *State v. Bass*, 251 Mo. 107, 157 S. W. 782.)

Where a conviction is sought on circumstantial evidence, each circumstance necessary to reach a conclusion of guilt must be fully and fairly proven, and if, in considering any such necessary circumstance, there is a reasonable doubt as to the evidence being sufficient to prove such circumstance, it must be resolved in favor of the appellant, and result in acquittal. (*State v. Brazzell*, 168 Iowa, 480, 150 N. W. 683; *Foley v. State*, 12 Okl. Cr. 17, 151 Pac. 486; *Nail v. State*, 12 Ala. App. 64, 67 So. 752.)

A. H. Conner, Attorney General, and Herbert Wing, Assistant, for Respondent.

The search of defendant's cabin was made with his acquiescence and permission; hence there is properly no question of illegal search and seizure involved in this case. (24 R. C. L. 723; *McClurg v. Brenton*, 123 Iowa, 368, 98 N. W. 881, 65 L. R. A. 519; *Smith v. McDuffee*, 72 Or. 276, Ann. Cas. 1916D, 947, 142 Pac. 558, 143 Pac. 929; *Commonwealth v. Tucker*, 189 Mass. 457, 76 N. E. 127, 7 L. R. A., N. S., 1056.)

On the question of defendant's challenge to the jury panel, no material departure from the forms prescribed is shown or that there was any intentional omission of the sheriff to summon a juror. (Sec. 8915, C. S.; *People v. Sowell*, 145 Cal. 292, 78 Pac. 717; *People v. Davis*, 73 Cal. 355, 15 Pac. 8; *People v. Shem Ah Fook*, 64 Cal. 380, 1 Pac. 347.)

Where there is evidence to sustain the verdict and there is a substantial conflict in the evidence, the verdict will not be disturbed. (*State v. Shepard*, 39 Ida. 666, 229 Pac. 87; *State v. Bouchard*, 27 Ida. 500, 149 Pac. 464; *State v. Nesbit*, 4 Ida. 548, 43 Pac. 66; *State v. Silva*, 21 Ida. 247, 120 Pac. 835; *State v. Downing*, 23 Ida. 540, 130 Pac. 461; *State v. Hopkins*, 26 Ida. 741, 145 Pac. 1095.)

Also see *State v. Black*, 36 Ida. 27, 208 Pac. 851, on circumstantial proof of *corpus delicti*.

The instruction on motive, as asked, was properly refused. (*Bonner v. State*, 107 Ala. 97, 18 So. 226; *Brunson v. State*, 124 Ala. 37, 27 So. 410; *People v. McGee*, 14 Cal. 99, 111 Pac. 264; *People v. Wilkins*, 158 Cal. 530, 111 Pac. 612; *Ince v. State*, 76 Ark. 615, 88 S. W. 818; *State v. Lu Sing*, 34 Mont. 31, 85 Pac. 521; *Porter v. State*, 173 Ind. 694, 91 N. E. 340.)

WILLIAM A. LEE, J.—Sam B. Shellabarger, a crossing watchman for the Oregon Short Line Railroad Company in Nampa, Canyon county, was killed on duty at the 9th Avenue crossing in said city about 10 o'clock on the night of March 14, 1923. An examination of the body made soon thereafter showed that death had been caused by a gunshot wound. The bullet had entered the left chest from the front a half inch internally of the nipple line at the third rib and passed out of the body posteriorly about two inches from the spine near the seventh rib.

On the following day appellant was arrested and formally charged with first degree murder in having caused the death of the deceased. Upon trial he was found guilty by a jury of murder in the second degree and the court sentenced him to a term of not less than twenty nor more than forty years in the state penitentiary. From the judgment of conviction this appeal is taken, and numerous assignments of error are made which may be classified as follows:

That the court erred:

(1) In denying the application for change of venue.

(2) In refusing to suppress evidence obtained in violation of law.

(3) In overruling challenge to the jury panel.

(4) In overruling appellant's objection to the admission of state's exhibits "A," "C," "F," "G," "H" and "I."

(5) In denying appellant's motion to instruct a verdict of not guilty at the close of the state's evidence, and in refusing appellant's request at the close of the evidence to instruct the jury to find appellant not guilty.

(6) In refusing to give requested instructions 1, 2, 3 and 5.

(7) In giving instructions 14 and 17.

(8) That the evidence is insufficient to sustain the verdict and that the verdict is contrary to law.

(9) That the verdict is contrary to the evidence in the particulars mentioned in the twenty-first assignment wherein the following particularly are specified:

(a) That the evidence was entirely circumstantial and did not meet the requirements of law for a conviction upon circumstantial evidence.

(b) That the jury disregarded instructions of the court wherein it instructed them that if the evidence could be reconciled on the theory of innocence or guilt, the law requires that the theory of innocence be adopted.

(c) That the *corpus delicti* was not proven.

(d) That there was no evidence tending to connect appellant with the commission of the crime.

(e) That the guilt of appellant was not clearly established and no motive was proven.

(f) That the evidence is insufficient to show that appellant was at or near the scene of the crime.

We will first consider the error predicated upon the refusal of the court to grant a change of venue. The application sets forth that the deceased was an old and respected resident of Canyon county with a large and favorable acquaintance, and that his death had caused widespread discussion from which it appeared there was great popular prejudice against appellant which would make it impossible

for him to have a fair trial in that county; that a number of newspapers of wide circulation in the county, subsequent to appellant's arrest, had published articles detrimental to him in that the same tended to inflame the minds of the people to such an extent that he could not secure an impartial trial in that county. The affidavit made by counsel in support of the application set forth that affiant had occasion to observe the state of public sentiment in that community regarding appellant's probable guilt, and that such a prejudice had arisen throughout the county by reason of articles published in the newspapers, and other causes mentioned, that appellant could not have a fair trial therein. Copies of a number of the newspaper articles complained of were attached to the affidavit and it averred that they had been read by the citizens of the county generally and excited great prejudice against appellant.

In resisting the application for a change of venue the state offered the affidavits of some sixty-two residents of the county which stated that such affiants were reasonably familiar with the sentiment of the people therein and believed that the newspaper articles published had not prejudiced the public mind to any great extent; and that there was no feeling of bias or hatred toward the accused, and that he could have a fair and impartial trial in that county.

The granting of a change of venue in a criminal action upon motion of defendant is a matter resting largely within the sound discretion of the trial judge, and a denial of such motion will not authorize the reversal of a judgment of conviction against a defendant where it manifestly appears from the record that the defendant had a fair and impartial trial and that no trouble was experienced in obtaining an impartial jury. (*State v. Gilbert,* 8 Ida. 346, 69 Pac. 62; *State v. Rooke,* 10 Ida. 388, 79 Pac. 82.) The rule, as stated in 16 C. J., p. 205, sec. 307, is:

"It is not sufficient merely to show that great prejudice exists against accused; it must appear that the prejudice against him is so great as to prevent him from receiving a fair and impartial trial, and where the evidence before the

court is conflicting, its decision will not be reversed upon appeal; and if the affidavits tending to show prejudice are met by an equal or greater number, the court properly in its discretion may deny the application.''

This question was considered at length in *State v. Hoagland,* 39 Ida. 405, 228 Pac. 314, wherein this rule was approved. We do not hold that the application for a change of venue should be denied because of a greater number of affidavits against the motion than for it. But where this is so and it does not appear that the court did abuse its discretion, a denial of the same is not reversible error. From an examination of the entire record we do not think the court erred in denying the motion for change of venue.

Counsel for appellant says that it is absolutely impossible for people to read detrimental articles directed against an accused person without taking on some degree of bias or prejudice. This is no doubt true, but if the law authorized a change of venue for this reason it would be practically impossible ever to try a person accused of crime in the community where it was committed. If the account of happenings in a community which are of sufficient importance to induce their publication as news items did not make any impression upon the pubile mind it would be an unusual situation. It is a well-recognized rule that if a juror can say that notwithstanding any impression made upon his mind by what he may have heard about the commission of a crime, including what he may have read in newspapers, if the state of his mind is such that he can and will give the accused a fair and impartial trial and will be guided in his final determination as to the guilt or innocence of the accused solely upon the evidence heard in court at the trial and the law as given to the jury by the court, such juror is not so prejudiced that he is in law disqualified from sitting as a juror. If the rule were otherwise jurors would have to be selected from a class who do not read or are so little informed about current events transpiring in their community that they know nothing of its affairs. This would result in

juries being made up of a class of persons below the average in intelligence, which the law does not require.

The second assignment is based upon the refusal of the court to suppress evidence alleged to have been obtained in violation of law by reason of the issuance of a search-warrant. It is claimed that the sheriff and other officers searched the premises of appellant by virtue of the authority of a search-warrant which they procured to be issued authorizing a search of appellant's cabin for intoxicating liquors, when the real purpose of obtaining such search-warrant was to secure evidence to be used against appellant upon a charge of first degree murder. Appellant contends that where a party has been charged with a capital offense the state may not obtain incriminating evidence against the accused by resorting to the expedient of procuring a search-warrant for contraband articles which the accused may be keeping in violation of law. This rule has no application to the facts of the instant case. The record shows that the sheriff, the chief of police and Edgeley, a special agent of the Oregon Short Line, who were investigating the facts relating to the commission of this crime, shortly after the occurrence asked appellant if he owned a gun, to which he replied that he had never owned a gun or had a gun in his home for a number of years; that he used to carry a gun but had not done so in late years. The officers then informed him that they desired to search the cabin where he lived for the purpose of ascertaining whether or not he did have a gun. This conversation was with the officers named in the presence of the public prosecutor, after appellant had been taken into custody. Upon the chief of police and sheriff interrogating him as to whether or not he had any firearms about his house and his denial of having any the sheriff asked appellant if he had any objection to their searching his house, to which he replied, ''Certainly not,'' and handed his key to the chief of police, saying, ''Here is the key, Larray, you go along,'' and then remarked to them, ''If you find a gun in the house you can do more than I can do.'' The officers found in appellant's home a 44 revolver,

five of the chambers being loaded and the one having an exploded shell, and the gun having the appearance of having been recently fired. Appellant made no objection to this search, but on the contrary gave the key to one of the officers with the statement above mentioned. Under these facts no question can arise as to an illegal search or seizure for the reason that appellant not only voluntarily submitted to the examination of his house but invited the officers to take his key and make such search.

It is shown that appellant had been drinking excessively during the few days immediately preceding this homicide and the argument is advanced that his physical and mental condition were such that he should not be held responsible for a waiver of his constitutional right to refuse the officers the right to search his place. But there is nothing in the record tending to show that at the time he invited this search he was incapable of giving such consent, or that any improper or undue means were used by the officers in order to obtain his permission. On the contrary, the facts warrant the inference that appellant believed he had this revolver so concealed behind a large block of wood in the door casing that it would not be found. It is highly improbable that he did not know it was there as he had claimed when first asked if he had such a weapon. His attempted explanation, when it was found, to the effect that it had been placed there by the sheriff in order to cast suspicion upon him, was manifestly inconsistent with the truth. The case falls within the rule that one who consents to have his property searched by an officer without a warrant cannot complain that the search was illegal. If officers armed with a search-warrant present it to the owner, or at the home of one accused of crime, and are invited by such person or anyone in possession of the premises having authority so to do, to enter under such circumstances that they do not act under the warrant, evidence obtained during the search is not illegally obtained. (24 R. C. L. 723; *Smith v. McDuffee,* 72 Or. 276, Ann. Cas. 1916D, 947, 112 Pac. 558, 143 Pac. 929; *Commonwealth v. Tucker,* 189 Mass. 457, 76 N. E. 127, 7 L. R. A., N. S.,

1056.)    There was no error in the court refusing to suppress
the evidence obtained by these officers, since it was obtained
by the consent of appellant and upon his invitation.

The third assignment is based upon the court's refusal to
sustain appellant's challenge to the panel.    A list of 150 per-
sons had been selected by the county commissioners to serve
as jurors and the court ordered that a jury of forty-five of
such persons named in the commissioners' list be summoned
as trial jurors for that term.    Among the persons named was
R. M. Swiggart whose surname was spelled Swigert in the
summons requiring him to appear as a juror.    It was shown
that the difference in the spelling of this name was a clerical
error, without any motive on the part of the officers in mis-
naming him in the summons.    C. S., sec. 8915, prescribing
grounds for a challenge to the panel, ought not to be so tech-
nically construed that the inadvertent misspelling of a per-
son's name would be reversible error, particularly where
done without any improper motive, and the person whose
name was correctly spelled in the county commissioners' list
was actually summoned and reported for jury service.    No
reason whatever has been suggested as to how this mistake
in the spelling of the juror's name in the summons had re-
sulted in any prejudice.

Error will not be presumed, but it must affirmatively ap-
pear from the record that the error complained of was of a
character sufficient to show that appellant was not given a
fair trial.    The purpose of C. S., sec. 9191, is to admonish
the courts in criminal procedure that errors or mistakes
which do not tend to prejudice the substantial rights of the
defendant should be disregarded.    (*State v. Hunsaker,* 37
Ida. 413, 216 Pac. 721.)    The clerical mistake in misspelling
this juror's name under the circumstances here shown cannot
be dignified as an error at law.

Specifications from 5 to 10, inclusive, relate to the admis-
sion of certain exhibits offered by the state.    These included
various articles such as a piece of metal that appeared once
to have been an empty shell, a block of wood into which had
been recently discharged leaden bullets of the caliber of the

revolver found in appellant's house, and the revolver itself together with a number of loaded cartridges. These assignments are not particularly argued in appellant's brief except as they are referred to in the argument relating to the insufficiency of the evidence to support the verdict, and the same may be said with reference to assignments from 11 to 18 which relate to the refusal of the court to give certain requested instructions and the giving of others upon the court's own motion, considered in appellant's brief under the contention that the evidence is insufficient to sustain the verdict.

Counsel makes an accurate summary of the more salient points in the evidence against appellant upon which the state relied for conviction. It will be remembered that while much of the state's testimony is of a direct and positive character, there was no eye-witness who testified that appellant fired the fatal shot. It is clearly shown that a shot was fired in the vicinity of the 9th Avenue crossing where the body of the deceased was later found, which shot was fired shortly before 10 o'clock. Several witnesses testified to having seen appellant in this immediate locality just before this shot was fired. Marie Bentson testified that she crossed this intersection on her return from having attended a night telegraph school uptown on Main Street some time after 9:30, and that she saw the deceased, Shellabarger, in his shanty as she crossed the track, and a short distance beyond she saw appellant who was standing near the brewery, which is on the west and immediately north of the railroad right of way; that he had some kind of instrument in his hand that would flash when the light shown on it; that he was standing there talking to himself, but when she passed him in going north he went in the opposite direction toward the railroad track, and when she last saw him he had crossed the first of the two tracks and was on the north side of the main line track. On direct examination she was asked, "Do you know who that person was?" and she replied, "Yes, sir," and to the question as to who it was she replied, "Kenneth McLennan." Upon a thorough cross-examination

in reply to counsel's question as to whether or not she could have been mistaken she replied that she could not and would stake her life upon the correctness of her identification; that in addition to walking with a peg-leg appellant also walked with a cane. In other parts of her testimony she showed that she was well acquainted with the general appearance of appellant, he having been a watchman at the same crossing for a considerable period prior to that time. The identification of appellant in this locality was equally clear on the part of the witness Fetter, who had known him for about four years and had frequently seen him as flagman at this and the 14th Avenue crossing; that on the night of the homicide he passed the 9th Avenue crossing about half-past 9, going north, and saw a man with a peg-leg alongside the brewery next to the railroad track, the witness being on the sidewalk when he passed appellant, and the two spoke, appellant saying "How do you do," but kept on going, and after the witness passed over the crossing he met someone driving a car. The witness Woodford followed Fetter on the stand, and stated that while he did not know appellant by name he knew him by sight, having seen him occasionally as a crossing watchman, and that he saw him on the switchtrack at the 9th Avenue crossing, and that appellant was standing still about halfway between the center of the street and the sidewalk, and thinking that appellant was a flagman at this crossing he lowered the speed of his car.

The evidence is most direct and conclusive that appellant was in the immediate locality of the deceased Shellabarger's cabin shortly before the time Shellabarger was killed.

The witness Craner stated that he had known appellant by sight about five months; that on the night of the 14th of March, 1923, the witness was on 3d North and 9th Avenue and left that point about 10 o'clock going over from 9th to 10th on 1st North and continued easterly to 11th Avenue from whence he went to Main street and reached there ten minutes after 10 o'clock, having occasion to stop and set his watch by the clock on the B. & B. building; that on his way he passed a man with a cork or peg-leg, seeing him first as

he came out from the right-hand side of 10th Avenue on the sidewalk headed east. This witness passed along about 100 feet and overtook the peg-legged man about forty feet from the 10th Avenue crossing and spoke to him, saying "Good evening," and the man replied, "Hello, Buddy"; that the lights were fairly good and that he was certain that the party thus spoken to was appellant.

Mrs. Le Von Senter among other things testified that she lived in Nampa between 9th and 10th Streets on 1st North and knew appellant by sight, he having been a flagman, and in seeing him around town; that on the evening deceased was killed she was at a picture show and in returning home crossed the track at 11th Avenue, where she heard the curfew which rang at 9:30; that she continued about two and one-half blocks to her home and shortly thereafter heard a report that sounded like the report of a gun, and as nearly as she could fix the time this was about 9:45; that thereafter she left her house to take a little girl home, going as far as the corner of 14th Avenue North, and in so going she saw a man she recognized as the former flagman on account of his disfigurement. This was between 12th and 13th Avenues, and just between two apartment houses, and that Mr. McLennan turned into the alley between 12th and 13th Avenues, she being very close to him when he turned into the alley; that this was about ten minutes after hearing the report.

Appellant complains that all of the witnesses who pretended to have identified him on this evening did so solely by reason of the person they saw being a peg-legged man, that is, a man who used a wooden peg instead of the natural foot. But a careful reading of this testimony shows that the witnesses were well acquainted with appellant's appearance; that he had been a flagman for a considerable period of time at this and other crossings in the city of Nampa. While this physical infirmity would direct attention to him, it is shown that he had other peculiarities that tended to make him easily recognizable. There is some testimony tending to show that there was an occasional visitor to the city

of Nampa who also was a peg-legged man, but there is no satisfactory evidence that he was in town at that time, and, on the contrary, the evidence does show that his appearance was quite different from that of appellant aside from this peculiarity.

This direct evidence is supplemented by many other facts and circumstances, such as finding marks in the sand near the deceased's cabin on the following day which appeared to have been made by a person with a peg or wooden leg; the finding of the revolver in appellant's cabin after his very positive denial that he owned a gun or that there was one in his cabin. This revolver had five chambers loaded with cartridges and the remaining chamber contained an exploded shell and the gun bore evidence of having recently been discharged. The contradictory declarations of appellant that he had not been near the 9th Avenue crossing on that evening but had been sick and not away from his house on that night or for two or three days preceding is squarely contradicted by the testimony of the witness McGill, who was offered on behalf of appellant, and who stated that he had seen appellant at Sparks pool hall on Front Street between 12th and 13th Avenues between 9:20 and 9:30 on that evening.

Counsel contends that the *corpus delicti* has not been proven and relies upon the rule as announced in *State v. Sullivan,* 34 Ida. 68, 17 A. L. R. 902, 199 Pac. 647. We adhere to the view that under well-settled principles of criminal law a conviction for crime cannot be had unless the *corpus delicti,* that is, the fact that a crime has been actually committed, has been first established. But it is there stated that the *corpus delicti* may be shown by circumstantial evidence where the proof is of such a character as to exclude all uncertainty. A number of witnesses including the examining physician and the undertaker testified that in their opinion death had been caused by a gunshot wound, and all the circumstances corroborate this view. There is nothing in the record to suggest that the death of Shellabarger was the result of an accident or self-inflicted. Hence the con-

tention that the *corpus delicti* has not been established is not worthy of serious consideration.

Any fact which becomes material in a criminal prosecution may, as a rule, be established by circumstantial as well as by direct evidence. Circumstantial evidence is often the only means of establishing the ultimate fact of guilt; and such evidence alone will support a conviction if it produces a belief beyond a reasonable doubt in the minds of the jury that the accused is guilty, and the conclusion of guilt need not necessarily follow from the circumstances in proof but may be obtained therefrom by probable deductions. The accused's evasions, denials, contradictions and falsities may be considered as links in the chain of circumstantial evidence showing his guilt. (16 C. J., sec. 1566, p. 762.)

In order to sustain a conviction based solely on circumstantial evidence the circumstances must be consistent with the guilt of the accused and inconsistent with his innocence, and incapable of explanation on any other reasonable hypothesis than that of guilt. (*State v. Marcoe,* 33 Ida. 284, 193 Pac. 80.) However, this rule operates only on the facts found by the jury and not on mere items of evidence adduced; and only those facts essential to a conviction need be incompatible with any reasonable hypothesis of innocence. The evidence need not demonstrate the guilt of the defendant beyond the possibility of his innocence; and if the circumstances as proved produce a moral conviction to the exclusion of every reasonable doubt, they need not be absolutely incompatible, on any reasonable hypothesis, with the innocence of accused. That is, if all the material circumstances in evidence point to guilt and exclude any reasonable hypothesis except that of guilt—in other words, if they are inexplicable on the theory of innocence—a conviction is warranted. (16 C. J., sec. 1568, p. 763.)

All evidence which legitimately tends to show that the defendant had the opportunity of committing the crime of which he is charged is clearly admissible as going to establish his connection therewith; and likewise, evidence tending to show that the accused, prior to the act, had the means by

which the offense was committed, is admissible. The admissibility of circumstantial evidence in criminal cases is too well established to need the citation of authority. Most crimes being committed in secret, if the direct testimony of eyewitnesses were required, but few convictions could be had. Circumstantial evidence is the proof of certain facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind. To render evidence of collateral facts competent there must be some natural, necessary or logical connection between them and the inference or result which they are designed to establish. It may be laid down as a safe rule that in no case is evidence to be excluded of any fact or circumstance connected with the principal transaction from which an inference as to the truth of a disputed fact can reasonably be made. (8 R. C. L., sec. 172, p. 179.)

Appellant urges as reversible error the refusal of the court to give the following instruction asked by appellant:

"The court instructs the jury that the absence of all evidence of an inducing cause or motive to commit the crime, when the fact is in reasonable doubt as to who committed it, affords a strong presumption of innocence."

The instruction as requested is objectionable in form and was properly refused. First, it is objectionable for the reason that it invades the province of the jury in assuming that there is no evidence in the record of an inducing cause or motive to commit the crime, and, secondly, that part of the instruction which tells the jury that "when the fact is in reasonable doubt as to who committed it" is not only a clear invasion of the province of the jury but assumes that there is reasonable doubt as to who committed the offense. This instruction would necessarily confuse the jury by leading them to infer that after they had come to a conclusion that there was a reasonable doubt as to who committed the crime, they must still pursue their investigation of the case further. It would have been highly improper for the trial court to have said that certain evidence afforded a strong presump-

tion of innocence. Whether the presumption is strong or otherwise is for the jury to determine, and any comment upon the weight of the evidence by the court is an unwarranted invasion of the province of the jury. (*State v. Lu Sing*, 34 Mont. 31, 9 Ann. Cas. 344, 85 Pac. 521; *Bonner v. State*, 107 Ala. 97, 18 So. 226; *People v. McGee*, 14 Cal. App. 99, 111 Pac. 264; *People v. Wilkins*, 158 Cal. 530, 111 Pac. 612; *Ince v. State*, 76 Ark. 615, 88 S. W. 818.)

From what has been said it follows that the judgment of the court below should be affirmed, and it is so ordered.

McCarthy, C. J., and Wm. E. Lee, J., concur.

Budge, J., did not sit at the hearing in this case and took no part in the decision.