(No. 6864.    March 18, 1941.)

STATE, Respondent, v. WILFORD WILSON, Appellant.

[111 Pac. (2d) 868.]

Frank Croner and J. G. Hedrick, for Appellant.

Bert H. Miller, Attorney General, Leo M. Bresnahan, Assistant Attorney General, and Chas. O. S. Scoggin, Prosecuting Attorney of Camas County, for Respondent.

AILSHIE, J.—This is an appeal from a judgment of conviction. Appellant was charged by information with breaking and entering a barn during the nighttime of November 8, 1939, with intent to commit larceny. The barn was situated on a farm about two and one-half miles northeast of Fairfield in Camas county. In the barn were two grain bins in which was stored a considerable quantity of Turkey Red wheat. Mr. Cluer, owner of the wheat, drove out to the barn about 7 A.M. of November 9th and found that the doors had been broken open during the previous night and claims there was "a hole in the wheat," which, he estimated, represented a loss or disappearance of 75 to 100 bushels which was in the bin the evening before. After investigations by Cluer and the sheriff of the county, appellant was arrested, charged with breaking into the building in the nighttime and taking some of this wheat. Trial resulted in conviction of appellant of burglary of the first degree, with recommendation of clemency.

The principal errors assigned on this appeal are: (1) That the verdict is not sustained by the evidence; (2) that the court erred in denying defendant's motion to

suppress certain evidence, illegally obtained by the sheriff at the time of and subsequent to appellant's arrest; (3) in permitting the sheriff to testify to certain alleged statements made by the defendant while under arrest; and (4) allowing the witness Boren to testify to certain conversations had between himself and defendant's witness Miller.

The conclusion which we have reached, as to the sufficiency of the evidence, will render it unnecessary to discuss any other specification of error.

The state called B. F. Wilson, defendant's father, who testified that the load of wheat, hauled by defendant on the night of November 8th, was taken "from the old Harvey house" which was situated on the Harvey farm; and that the grain stored in the house was his (the witness') grain and had been grown by him on the Harvey place. It is true that, on cross-examination, he said he was not present at the granary when the wheat was loaded, but he insisted that he knew it was his grain the defendant hauled on that occasion. John B. Miller, called by defendant, testified that he worked for defendant and went with defendant to load the grain, on the evening of November 8th, and that he (the witness) shoveled the grain out of the bin, at the Harvey house, into the truck.

The other evidence, except the testimony of defendant himself, was wholly circumstantial and chiefly the merest suspicion, not worthy to enter the classification of circumstantial evidence. It takes more than mere suspicion to send a man to prison, for a felony in Idaho,— there must be substantial evidence, either direct and positive, or circumstantial. Circumstantial evidence must be not only consistent and compatible with the guilt of an accused, but it must also be inconsistent with any reasonable theory of his innocence. (*State v. Burke*, 11 Ida. 420, 427; *State v. Nesbit*, 4 Ida. 548, 556; *State v. Seymour*, 10 Ida. 699, 712; *State v. Lumpkin*, 31 Ida. 175, 178; *State v. Marcoe*, 33 Ida. 284, 286; *State v. Grover*, 35 Ida. 589, 597; *State v. Yancey*, 47 Ida. 1, 4; *State v. Sorensen*, 37 Ida. 517, 526; *State v. McLennan*, 40 Ida. 286, 302; *State v. Dawn*, 42 Ida. 210, 213; *State v. Hix*, 58 Ida. 730, 741.) *State v. Burke, supra,* is, in many re-

spects, parallel with the case at bar and supports the holding herein.

■ In this case there was an utter lack of any substantial evidence to justify a conviction. The attempt to discredit the testimony of the state's own witness, B. F. Wilson, was unsuccessful, as was also the effort to impeach the witness Miller, by proof of extrajudicial statements contrary to his testimony in court, wholly inadequate to accomplish its intended purpose.

The judgment is reversed and the cause is remanded with direction that a new trial be granted, in case the trial judge is satisfied by the prosecuting attorney that further and additional evidence can be obtained tending to show the guilt of defendant, otherwise to dismiss the action.

Morgan and Holden, JJ., concur.

BUDGE, C. J. (Dissenting)—Appellant Wilford Wilson convicted of first degree burglary prosecutes this appeal from the judgment.

Briefly the evidence discloses that a quantity of Turkey Red wheat had been stored in a barn on the Leland Cluer ranch. On the evening of November 8, 1939, when inspected by Mr. Cluer, the barn was locked and no tire tracks were visible in the vicinity of the barn. Early on the morning of November 9th Cluer discovered the barn had been broken into and approximately 75 to 100 bushels of wheat had been removed and the tracks of six tires were found near the barn and leading to it. Plaster casts were made of these tracks. The record also discloses that on the night of November 8th defendant hauled a load of wheat to Gooding, remaining there part of the night from about 2 A.M. until morning and then the wheat was hauled on to Wendell where it was sold to the Wendell Elevator Company, the load containing approximately 75 bushels. From casts made from the tracks made by the tires on the truck used to haul the wheat sold to the Wendell Elevator Company by appellant and comparisons made with the casts made of tracks found near the Cluer barn it appeared that the tracks were very similar if not identical. From samples of wheat taken from the Cluer barn, from

the wheat delivered by appellant to the Wendell Elevator Company and from wheat taken from a barn used as a granary by appellant and his father, comparisons and tests were made the result showing that the three samples were all similar in kind and quality.

Appellant's six assignments of error present five main questions upon which appellant seeks a reversal.

It is urged that the court erred in denying the motion of appellant to suppress certain evidence, the truck and casts taken of its tires, it being urged the truck was taken without a warrant or consent of appellant.

It has been determined by this court that one who consents to have his property searched by an officer without a warrant cannot complain that the search was illegal and there is no error in the court refusing to suppress evidence obtained by his consent and invitation. (*State v. McLennan*, 40 Ida. 286, 231 Pac. 718; *State v. Beach*, 51 Ida. 183, 3 Pac. (2d) 539; *State v. Kaiser*, 49 Ida. 351, 288 Pac. 154; *State v. West*, 42 Ida. 214, 245 Pac. 85.)

From the record it appears that title to the truck in question was in the name of B. F. Wilson, father of appellant. While there was evidence, upon the hearing of the motion to suppress, that appellant owned a part interest in the truck such claim was not made by appellant or B. F. Wilson prior to taking of evidence on the motion to suppress and such title was not of record. With relation to B. F. Wilson, appellant's father, the record contains evidence, although conflicting, from which the court could have found that B. F. Wilson gave his consent to the taking of the truck for the purposes of evidence. Though it. be conceded that it subsequently appeared that appellant also owned a part interest in the truck it still does not appear that the court erred in refusing to suppress the evidence. There is no contention that appellant's arrest was unlawful. With relation to the arrest and the taking of the truck the record discloses that the sheriff visited the B. F. Wilson ranch, saw the truck in the yard, and as a result of what he saw appellant was arrested and shortly thereafter in connection with such arrest the sheriff secured the truck. A search and seizure made incidental to a lawful arrest, is not prohibited as

being unreasonable within the meaning of our constitution, art. 1, sec. 17, and evidence seized is not thereby rendered inadmissible. (*State v. Conner*, 59 Ida. 695, 89 Pac. (2d) 197; *State v. Myers*, 36 Ida. 396, 211 Pac. 440.) There was no error in refusing to suppress nor in admitting the evidence.

Appellant urges the court erred in failing to instruct the jury as to the statutory definition of the crime of larceny. Although appellant requested thirty-eight instructions, no request was made for the court to give an instruction defining larceny. It is well settled that an omission to instruct the jury on a particular point is not erroneous where no instruction on the point was requested by appellant. (*State v. Boyatt*, 59 Ida. 771, 87 Pac. (2d) 992; *State v. Smailes*, 51 Ida. 321, 5 Pac. (2d) 540; *State v. Roby*, 43 Ida. 724, 254 Pac. 210; *State v. Jurko*, 42 Ida. 319, 245 Pac. 685.) In addition to the fact no request was made for an instruction defining larceny, it is not error for the court not to define general and commonly used terms. (*State v. Pettitt*, 33 Ida. 326, 334, 193 Pac. 1015; *State v. Marks*, 45 Ida. 92, 98, 260 Pac. 697; 16 C. J. 966, sec. 23, note 78; 23 C. J. S. 737, sec. 1191, note 37.) The statutory definition of the word "larceny," "the felonious stealing, taking, carrying, leading, or driving away the personal property of another" (sec. 17-3501, I. C. A.), is approximately the same as the ordinary definition:

"Larceny: The unlawful taking and carrying away, without claim of right, of the personal goods of another with intent to defraud the owner of them; theft." (*Funk and Wagnalls New Standard Dictionary*, 1937.)

"Larceny: The unlawful taking and carrying away of things personal, with intent to deprive the rightful owner of the same; theft." (*Webster's New International Dictionary*, 1935.)

Any failure to define "larceny" in the instructions was not prejudicial error.

It is briefly urged the court erred in allowing the sheriff to relate, over objection, alleged statements made by appellant when he was under arrest. The statements referred to were to the effect that appellant had stated to

the sheriff he had not sold any wheat in the last week and that he had never done anything like this before. Such voluntary statements, amounting at the most to nothing more than admissions, were competent evidence and not improperly admitted. (*State v. Hargreaves*, 62 Ida. 8, 107 Pac. (2d) 854; *State v. Wilson*, 41 Ida. 616, 243 Pac. 359; *State v. Allington*, 4 Ida. 529, 43 Pac. 60; *State v. McLennan, supra.*)

Appellant's assignment to the effect that the court erred in failing to advise the jury to acquit him is not reviewable on appeal from the judgment. (*State v. Conner*, 59 Ida. 695, 89 Pac. (2d) 187; *State v. Stevens*, 48 Ida. 335, 282 Pac. 93; *State v. Smith*, 46 Ida. 8, 265 Pac. 666; *State v. George*, 44 Ida. 173, 258 Pac. 551.)

Appellant urges the court erred in permitting the witness Boren to testify to certain conversations had with John Miller in Pomeroy, Washington, because the state did not comply with the requirements of sec. 16-1210, I. C. A., that is, did not lay the proper foundation for this testimony elicited for the purpose of impeachment of the testimony of the witness Miller. The witness Miller had testified in effect that he loaded the wheat for appellant from the granary in which wheat belonging to appellant and his father was stored. The testimony of Boren was to the effect that at Pomeroy, Washington, Miller had made statements inconsistent with his testimony, to the effect that appellant was guilty; that appellant had wanted him to go with him and steal the wheat from Cluer; that appellant had stolen a load of wheat, took it to Wendell and sold it for $45.00, and that afterwards the witness Miller had stolen a little more wheat from Cluer, took it to the Wilson granary and scattered it over the floor so the grain would be the same if they checked on it. Section 16-1210, I. C. A., referred to by appellant is as follows:

"A witness may also be impeached by evidence, that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. . . . "

The witness Miller was asked in a series of questions if he knew where the George Miller garage or repair shop was in Pomeroy, Washington; if he had met Vernon F. Boren, and if he remembered talking with Vern F. Boren at the George Miller garage April 1st at 10:30 A.M. and if he had had dinner with Vern F. Boren at Pomeroy, Washington, the morning of the same date, April 1st. The witness was then asked the following question:

"Did you, Mr. Miller, in the presence of one Vern F. Boren, on April 1st, 1940, at about 10:30 A.M. in the George Miller repair shop make the following statement, in Pomeroy, Washington?"

and to the witness was then fully related the statements the witness Boren thereafter testified Miller had made. The question to the witness Boren was as follows:

"Calling your attention—one minute—to one meeting with him (Johnnie Miller) on the first of April, 1940, I will ask you, Mr. Boren, if Johnnie Miller made this statement. ... Where was this statement made to you? A. Made to me in the Miller garage, Pomeroy, Washington."

In *State v. Boyatt*, 59 Ida. 771, 87 Pac. (2d) 992, this court considering section 16-1210, I. C. A., said:

"Of course, there must be a substantial compliance with the statute, (Sec. 16-1210, I. C. A.), but it must not be given a construction which would have the effect of devitalizing it. This court, in *State v. Brassfield*, 40 Ida. 203, 209, 232 P. 1, approved the rule:

" 'The essential matter however, is that the witness shall not be misled; and where it is plain that the attention of the witness was directed to the identical occasion or conversation brought out by the impeaching testimony, this is sufficient; and it is immaterial that the question put to the witness does not designate exactly or varies slightly from the impeaching evidence as to the time or place at which, or the name of the person to whom the statement was made, or the exact words used in the former statement, or even fails to designate the persons to whom or in whose presence the statement was made.' "

An examination of the record herein discloses without question that a proper foundation was laid for the questions asked. The statements were related to Miller and

the circumstances, time, place and the person to whom he had made them were quite definitely related to the witness Miller, and we see no merit in appellant's contention that no proper foundation had been laid for the impeachment of the witness.

The remaining assignment of error urges that the verdict is contrary to law and the evidence and that the evidence is insufficient to support the verdict in several particulars.

Appellant contends that the undisputed testimony of B. F. Wilson, a witness for the state, which testimony is confirmed by testimony on behalf of appellant, conclusively proved the innocence of appellant. Appellant's theory is apparently that the witness B. F. Wilson, father of appellant, called by the state, gave testimony exculpatory in nature and that the state did not rebut such exculpatory evidence contained in its own case, and is therefore bound by the testimony of its own witness, relying in part at least upon the case of *State v. Copenbarger,* 52 Ida. 441, 16 Pac. (2d) 383, and *State v. Darrah,* 60 Ida. 486, 92 Pac. (2d) 143 (on rehearing). The foregoing cases consider the effect of evidence introduced by the state consisting of defendant's admissions to public officers, not made under oath, and relied upon, in part at least, to support the verdict. Such statements or admissions also contained exculpatory matter or matter tending to show the defendant was not guilty or acted in self-defense, the rule announced being to the effect that where the state under such circumstances introduces exculpatory evidence the burden rests upon the state to show that such exculpatory evidence is false. The situation herein is not like that considered in *State v. Copenbarger and State v. Darrah, supra.* We are not concerned with appellant's admissions to police officers, but are concerned with the testimony of a state's witness who was the father of appellant. An examination of the record discloses further that appellant's proposition that the state was bound by the testimony of B. F. Wilson because such testimony absolutely and conclusively and without dispute proved appellant's innocence need not be considered inasmuch as it is based on the false premise such testimony proved that the wheat hauled to Wendell

and sold came from the Wilson granary. While B. F. Wilson did testify in effect that Johnnie Miller and appellant had loaded a load of wheat from the Wilson granary and that appellant hauled the same to Wendell and sold it, he further testified when asked how much wheat was in this load that: "I didn't see them load. . . . I couldn't tell you exactly, because I didn't see it in the truck." In other words the jury could properly have determined from B. F. Wilson's testimony that he had no actual knowledge as to whether any wheat was hauled to Wendell or that any wheat was loaded from his granary, but that he was testifying purely to an assumption, based upon what he thought or upon second-handed information.

Appellant's remaining argument is to the effect that the evidence is entirely consistent with the innocence of appellant; that there is no positive evidence showing any grain was taken, or that appellant was guilty of burglary, and that the evidence was insufficient to warrant the court in allowing the case to go to the jury. True, the evidence is largely circumstantial but there was evidence upon all points referred to amply sufficient to sustain the verdict of the jury.

From what has been said it follows that the judgment should be affirmed.

Givens, J., concurs.