519 P.2d 958

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Daniel George GOODRICK, Defendant-Appellant.**

**No. 11116.**

Supreme Court of Idaho.

March 1, 1974.

James F. Judd, Post Falls, for defendant-appellant.

W. Anthony Park, Atty. Gen., Boise, Tom Vasseur, Asst. Atty. Gen., Coeur d'Alene, William F. Lee, Deputy Atty. Gen., Boise, Gary M. Haman, Prosecuting Atty., Coeur d'Alene, for plaintiff-respondent.

McFADDEN, Justice.

Daniel George Goodrick, the defendant-appellant, was charged with and following a trial before a jury was found guilty of the crimes of kidnapping in the second degree and of rape. Following entry of judgment of conviction and sentence to the penitentiary, Goodrick appealed to this court.

On appeal Goodrick contends in his assignments of error that the evidence is insufficient to sustain his convictions of rape and kidnapping in the second degree; that the trial court erred in failing to instruct the jury concerning the distinction between direct and circumstantial evidence, and that the trial court erred in allowing one of the state's witnesses, Reed Dixon, to testify without first having his name endorsed on the information.

Concerning the assignments of error directed to the sufficiency of the evidence to sustain Goodrick's conviction, the state in its presentation of the facts established the following.

Two Canadian couples, Mr. and Mrs. Percy Smith and Mr. and Mrs. James Galbraith, were traveling on vacation in a pickup camper when they stopped overnight in Post Falls on July 26, 1971. They parked their camper on a vacant lot adjacent to defendant Goodrick's mother's home, at Goodrick's invitation. During the afternoon and evening the two Canadian men and Goodrick had a few drinks together. After dinner Smith joined Goodrick and his mother and continued drinking with them in taverns in Post Falls. During the course of the evening Goodrick returned to the camper seeking an identification card for Smith to enable him to be served intoxicating liquor. At that time, the three who remained, Mrs. Smith (the prosecutrix) and the Galbraiths, had already retired and were awakened by Goodrick's return.

About 5:00 a.m., Goodrick again returned to the camper and awakened the occupants stating to Mrs. Smith that her husband Percy had been arrested and was in jail in Coeur d'Alene and needed bail bond money. Mrs. Smith arose, dressed and accompanied him. The Galbraiths testified as to hearing Goodrick's discussion with Mrs. Smith.

Mr. Smith testified that he became intoxicated during the evening and went to bed in a bunkhouse on the Goodrick property. When he awoke the next morning he found himself locked in the bunkhouse and he had to break out through a window. After Smith broke out, the Galbraiths knew things were wrong and called the sheriff's office in Coeur d'Alene.

When Goodrick took Mrs. Smith with him, he was driving his mother's car. He had some wine with him, which he drank. He left the main traveled road onto a dirt road, supposedly a short-cut to their destination. Mrs. Smith was fearful of his condition and asked to drive. Goodrick acceded to this request, and as they continued down the dirt road, the defendant revealed his intentions of raping her. Mrs. Smith pleaded with him, but he threatened her with a handgun (a BB or pellet gun similar in design to an "automatic" pistol) and a knife. Mrs. Smith stopped the car and again unsuccessfully pleaded with the defendant not to rape her. After the rape, Mrs. Smith picked up the handgun, struck the defendant and escaped. After Goodrick left, she returned to the scene and picked up the gun. Carrying the gun she again ran until she came upon Mr. and Mrs. Charles Sweitzer, who were camping on Brickel Creek. Mrs. Smith was in a state of shock and was crying for help. She gave the Sweitzers the gun, and they took her to Spirit Lake where they contacted police officers. The officers took Mrs. Smith to Coeur d'Alene where she met her husband and the Galbraiths.

Mrs. Smith told her story to the officers in the sheriff's office. The officers arranged for Mrs. Smith to be examined by a physician. The physician examined her and took several vaginal smears. Later these vaginal smears were examined at a laboratory. The doctor testified that he

examined one of the smears and found motile sperm. The doctor testified that it was his conclusion based on his examination of Mrs. Smith and from the examination of the smear, "* * * that there has been sex contact within probably four hours by the number, by the motility of the sperm that were noted."

Although Goodrick gave an entirely different version of the facts and what transpired, it is the conclusion of the court that there was ample substantial, competent, although conflicting evidence before the jury to sustain the convictions of the crimes of which the defendant was found guilty. State v. Stevens, 93 Idaho 48, 454 P.2d 945 (1969); State v. Bullis, 93 Idaho 749, 472 P.2d 315 (1970).

The defendant further contends that Mrs. Smith, the prosecutrix, was impeached by proof of her having given evidence contradicting her testimony at trial. During her cross-examination, Mrs. Smith stated that the defendant held a gun on her when he forced her to park the car, get out, open the trunk, remove a sleeping bag and place it on the back seat. Defendant's counsel during this cross-examination, submitted to Mrs. Smith and had her read into the record a portion of the testimony she gave at the preliminary hearing where she stated that the gun had been placed under the front seat of the car prior to her leaving the car to get the sleeping bag, and that the defendant threatened her with an open pocket knife during this time. Defendant asserts that these contradictory statements sufficiently impeached her trial testimony and that her testimony had to be corroborated by "direct evidence." He argues that there is insufficient corroborative evidence and that his conviction must be reversed.

In support of his position, the defendant cites and relies on language found in the case of State v. Elsen, 68 Idaho 50, 187 P. 2d 976 (1947), where this court stated,

"If, however, her character or reputation for truth and chastity, or either is impeached, or her testimony is contradic-

tory or is inconsistent with the admitted facts of the case, or is inherently improbable or incredible, then there must be *direct* evidence corroborating her testimony." (Emphasis added.) 68 Idaho at 54, 187 P.2d at 798.

This quotation from State v. Elsen is a part of a summarization of holdings of other opinions of this court. The use of the phrase "direct evidence" in the above summarization is not sustained by holdings of those cases, if the phrase is construed to mean "testimonial evidence" as opposed to "circumstantial evidence."

In State v. Elsen, supra, the opinion later points out that where the prosecutrix was impeached,

"* * * this case requires evidence other than the testimony of the prosecutrix which in and of itself, and without the aid of her testimony, tends to support her testimony that the offense was committed, and which makes it appear probable that the accused was the perpetrator." 68 Idaho at 55, 187 P.2d at 978.

Continuing, the opinion, at 68 Idaho 56, 187 P.2d 979, without any reference to the necessity of "direct evidence," states, concerning the nature of the corroborative evidence:

"But the corroboration required must be evidence other than the testimony of the prosecutrix herself, and must proceed from other sources than the prosecutrix alone."

See, State v. Linebarger, 71 Idaho 255, 232 P.2d 669 (1951), where the court quoted from State v. Elsen, supra, and held the evidence submitted was sufficient to sustain the verdict, not only pointing to direct testimony of other witnesses, but also certain physical evidence admitted as exhibits. In State v. Gee, 93 Idaho 636, 470 P.2d 296 (1970), the court again discussed the rule concerning corroboration of the testimony of a prosecutrix in a rape case. There the court recognized that even though the prosecutrix was slightly confused when responding to questions posed, her reputation for truth was not attacked, yet this court

examined circumstances surrounding the offense, and held the evidence sustained the conviction.

Here there was admitted in evidence color photographs of the rear seat of the car used by the defendant. These photographs show blood on the rear seat, which corroborate Mrs. Smith's testimony that after the rape she hit the defendant with the pistol causing him to bleed. The doctor who examined Mrs. Smith also testified to a bruise on her·head, corroborative of her testimony that the defendant struck·her with the pistol. Mr. and Mrs. Galbraith testified they were awake when the defendant came back to the camper at 5:00 a. m. and heard the defendant advise Mrs. Smith that her husband had been arrested and was in jail. However, at the time of this conversation, Mr. Smith was locked in the bunkhouse. Evidence obtained by the police officers who examined the location where the offense took place further corroborate Mrs. Smith's testimony. These officers found and identified a wine bottle and a broken glass, both of which have been described by Mrs. Smith.

■ Mrs. Sweitzer, a witness called by the state, testified that she and her husband were at a campsite when Mrs. Smith came to it early that morning. Mrs. Sweitzer testified to the disheveled appearance and disturbed mental state of Mrs. Smith at that time. Mrs. Sweitzer also described the handgun Mrs. Smith brought with her at the time she came to the Sweitzer campsite. The examining doctor's testimony that it was his conclusion she had had "sexual contact" within "probably four hours" was also corroborative of her testimony, especially in view of the fact that within that period of time her husband had not been with her, but·had been locked in the bunkhouse. It is our conclusion that the record contains ample independent evidence corroborative of the prosecutrix's testimony.

The next issue to be considered is the defendant's contention concerning circumstantial evidence. It is his position that the trial court failed to instruct the jury concerning the distinction between direct and circumstantial evidence. By his citation of the case of State v. Wilson, 62 Idaho 282, 111 P.2d 868 (1941), he alludes to the proposition that the trial court should have given an instruction to the effect that in a criminal case where the proof is dependent upon circumstantial evidence the circumstances must not only be consistent and compatible with the guilt of an accused, but it must also be inconsistent with any reasonable theory of his innocence. In State v. Wilson, supra, the court considered the sufficiency of the evidence in a burglary conviction which evidence consisted solely of circumstantial evidence and held it insufficient to sustain the conviction. In State v. Davis, 69 Idaho 270, 206 P.2d 271 (1949), the court again dealt with a case based solely on circumstantial evidence and held that even though the evidence was convincing, the trial court erred in not giving requested instruction on circumstantial evidence. There the court pointed out

> "Inasmuch as the state in the case at bar relied for conviction upon circumstantial evidence (there being no eyewitness to the alleged theft of the car), and, further, and inasmuch as the trial court did not give the jury an instruction on circumstantial evidence, appellant having requested an instruction stating the law as held by this court in State v. Marcoe [33 Idaho 284, 193 P. 80 (1920)] and State v. McLennan [40 Idaho 286, 231 P. 718 (1925)], the trial court should have either given the requested instruction or a similar instruction correctly stating the law applicable to circumstantial evidence." 69 Idaho at 274, 206 P.2d at 274.

■ In the case before the court, the state was not relying solely on circumstantial evidence to establish the defendant's guilt. Here both direct and circumstantial evidence was presented to the jury for their consideration, and, as previously pointed out, this evidence was sufficient to

uphold the conviction. It is our conclusion that the court did not err in this regard.

■ Furthermore, the defendant did not submit a requested instruction on this point. In State v. Beason, 95 Idaho 267, 506 P.2d 1340 (1973), the court pointed out the duty of a trial court to give on its own motion pertinent instructions concerning the nature of the crime and essential principles applicable. I.C. § 19–2132. In that case, the court also pointed out that if the accused desired additional instructions on a particular issue he must request such instructions. While it would have been proper and the better practice to have given an instruction on the distinction between circumstantial and direct evidence, it is our conclusion that in the absence of a request for such an instruction, there was no error. See, State v. Davis, supra.

■ Finally, the defendant questions the prosecution's failure to endorse the name of a witness on the information. The prosecution called Officer Reed Dixon to testify even though his name had not been endorsed on the information. The defendant objected to any testimony being given by this witness. The trial court denied his objection and allowed the officer to testify. On appeal, the defendant assigns this as error and contends that at the time the information was filed, on November 29, 1971, I.C. § 19–1302 required that the names of all witnesses known to the prosecution to be called on the case in chief be endorsed on the information. Appellant cites in support of his assignment of error in this regard, State v. Barber, 13 Idaho 65, 88 P. 418 (1907). However, in 1971 this court adopted Rules of Criminal Practice and Procedure (I.C.R.), effective as of January 1, 1972. Rule 59 provides:

"These rules shall take effect at 12:01 a.m. on the 1st day of January, 1972. They govern all criminal proceedings thereafter commenced and so far as just and practicable all proceedings then pending."

Rule 16(a)(1)(vi) provides: "Upon motion of the defendant the court may order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all persons having knowledge of the relevant facts who may be called by the state as witnesses * * *." Trial of this case commenced March 22, 1972, three months after the effective date of the new rules. The trial court relied upon the provisions of the Rules of Criminal Practice and Procedure in denying defendant's objections. At no time did the defendant seek a continuance of the trial, and he failed to show in what way he was prejudiced. Further, the testimony elicited from Officer Dixon only concerned the chain of possession of certain evidence. We find no error in this regard. State v. Coburn, 82 Idaho 437, 354 P.2d 751 (1960); State v. Hoagland, 39 Idaho 405, 228 P. 314 (1924).

The judgment of conviction is affirmed.

SHEPARD, C. J., and DONALDSON, McQUADE and BAKES, JJ., concur.